IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS O'BRIEN and
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,

    Plaintiffs,

vs.                                                                  No.

DAVID E. MITCHELL,
Personal Representative
of the Estate of Walter Mitchell, Deceased,

    Defendant.

## COMPLAINT TO SET ASIDE JUDGMENT

COME NOW Plaintiffs, by Michael Dickman, Attorney at Law, pursuant to Fed.R.Civ.P. 60(d)(1) and 60(d)(3) and the common law, and bring this complaint to set aside and make null and void a judgment entered by the United States District Court for the District of New Mexico in the civil action entitled <u>Mitchell v. County of Santa Fe and O'Brien</u>, Cause No. 05-CV-1155-JB/LAM (<u>see</u> Doc. No. 45).  This action is an independent action in equity to obtain relief from a judgment, and a motion to set aside a judgment for fraud upon the court.

Plaintiffs allege as follows:

### PARTIES

1.    Plaintiff Board of County Commissioner of Santa Fe County ("County") is the legal entity authorized to bring action on behalf of the County of Santa Fe, State of New Mexico, pursuant to Section 4-46-1 NMSA 1978.  By virtue of the New Mexico Tort Claims Act, the County is a real party in interest to civil actions for damages that are brought against Santa Fe County and its public employees


who are alleged to have acted within their scope of duties.

2. Plaintiff Dennis O'Brien ("O'Brien") resides in the County of Santa Fe, New Mexico and is a former Sergeant and Lieutenant with the Santa Fe County Sheriff's Department.

3. Plaintiff O'Brien acted within the course and scope of his duties at all material times on November 4, 2002, the day of the shooting of Walter Mitchell.

4. Defendant David E. Mitchell ("Defendant") resides in Washington, D.C. and is the brother of Decedent Walter Mitchell ("Mitchell"), who died intestate on or about October 16, 2008. Defendant is the court-appointed Personal Representative of the Estate of Walter Mitchell. On information and belief, all other potential heirs to the Estate of Walter Mitchell have disclaimed their interest in any and all personal and real property in the Estate, including the judgment in favor of Mitchell entered in United States District Court Cause No. 05-CV-1155-JB/LAM on December 31, 2007 (Doc. 45), and Defendant thus is the sole heir and beneficiary of the Estate of Walter Mitchell.

### JURISDICTION AND VENUE

5. The Court has jurisdiction over the parties and the subject matter of this action to set aside the judgment, pursuant to 28 U.S.C. § 1331, Fed.R.Civ.P. 60(d)(1) and 60(d)(3) and the common law, because the judgment was entered in a civil action arising under the Constitution and laws of the United States, and the Court has inherent jurisdiction to redress fraud upon the Court and to entertain independent actions in equity to obtain relief

from its judgments.  In addition, this is a civil action between citizens of different states, where the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and thus the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

6.   Venue is proper in the District of New Mexico because all material acts occurred in the State of New Mexico including the alleged fraud upon the Court, and thus the cause of action arose here; the judgment was entered by the United States District Court for the District of New Mexico, in New Mexico; Defendant's decedent filed a notice of lis pendens, based upon the judgment, in the County of Santa Fe, New Mexico; the Estate of Walter Mitchell was probated in the State of New Mexico; and all Plaintiffs reside in the District of New Mexico.

**ALLEGATIONS REGARDING THE STATE-COURT CRIMINAL PROCEEDINGS**

7.   On November 4, 2002, Mitchell, after having consumed an excessive dose of medication that apparently caused him to become psychotic and/or hypomanic, attacked his neighbor's dog with a sword in Santa Fe, New Mexico and almost struck the young neighbor (Mayre Perez) with his sword.  Ms. Perez, believing that Mitchell might strike her, called her parents, who in turn called police.

8.   On November 4, 2002, Mitchell had a substantial disorder of thought, mood and behavior.

9.   Sgt. Dennis O'Brien, Deputy Sheriff Rafael Rodriguez, Deputy Sheriff Fred Borman and Deputy Sheriff Billy Smith, all employed by the Santa Fe County Sheriff's Department, were dispatched to the scene.  When they arrived, the neighbor's father,

Filiberto Perez, was holding Mitchell at bay with a piece of pipe.

10. O'Brien was the lead officer on November 4, 2002.

11. Upon their arrival, several officers instructed Mitchell to put down the sword (which was in its scabbard) but Mitchell removed the sword from the scabbard and held it in a threatening manner. The deputies continually instructed Mitchell to put down his sword but Mitchell refused to comply. On two occasions, Mitchell advanced on O'Brien while holding his unsheathed sword in a threatening manner but then retreated; both times, O'Brien believed that Mitchell intended to attack him with the sword. Then, Mitchell advanced on O'Brien a third time at a quicker pace and O'Brien believed he was being attacked. O'Brien retreated as far as possible, backing up as he faced Mitchell, while Mitchell continued to advance toward him with his sword, until O'Brien had retreated as far as possible by backing into a parked vehicle. O'Brien thereupon shot Mitchell three times as Mitchell continued to advance towards him, facing O'Brien. Thereafter, the officers arrested Mitchell.

12. Mitchell made statements during the incident regarding the Apocalypse and stated, "I hate cops." During his third and final attack on O'Brien, Mitchell held his sword with one hand on the grip and the other against his palm, with the blade facing outward and toward Sgt. O'Brien; while quickening his pace towards O'Brien, Mitchell had a look of rage in his eyes.

13. In addition to Mitchell, seven eyewitnesses observed the incident described in paragraphs 7-12 above, including the

discharge of the firearm into the front of Mitchell's body as Mitchell charged O'Brien, to wit: Dennis O'Brien, Rafael Rodriguez, Fred Borman, Billy Smith, Mayre Perez (an eleventh grader at the time) and her parents Filiberto Perez and Margarita Perez.

14. On information and belief, all seven eyewitnesses specified in paragraph 13 above would, if called to testify, testify to Mitchell's frontal sword charge on Sgt. O'Brien while O'Brien, moving backwards, backed into a parked car prior to firing his gun as Mitchell continued to charge him at a quickened pace.

15. On November 15, 2002, the Grand Jury of Santa Fe County, State of New Mexico indicted Mitchell for two felonies, based on the events described in paragraphs 7-12: aggravated assault upon a peace officer (Sgt. Dennis O'Brien), and aggravated assault with a deadly weapon, to wit: a sword, upon Mayre Perez, contrary to Sections 30-3-2, 30-22-22 and 30-22-23 NMSA 1978.

16. On March 16-18, 2004, following a bench trial at which Mitchell was represented by two attorneys, the District Court of the First Judicial District, Santa Fe County, State of New Mexico convicted Mitchell beyond a reasonable doubt of both felony charges and found Mitchell guilty but mentally ill.

17. The Court made express, written Findings of Fact and Conclusions of Law, entered in State of New Mexico v. Mitchell, First Judicial District Court, State of New Mexico, Santa Fe County No. D-101-CR-2002-1027, including but limited to the facts alleged in paragraphs 7-12 above. A true copy of the document is attached as Exhibit A.

18.  Mitchell, represented by counsel, had a full and fair opportunity to litigate all factual issues decided by the Court in Case No. D-101-CR-2002-1027.

19.  Mitchell, represented by counsel, filed a written waiver of his right to appeal the two felony convictions.

20.  Mitchell's waiver of his right to appeal was made knowingly and voluntarily, and with the assistance of counsel.

21.  Mitchell possessed direct, personal knowledge of the facts alleged in paragraphs 7-20 above including but not limited to knowledge of the Court's Findings of Fact and Conclusions of Law (Ex. A), based on proof beyond a reasonable doubt.

### ALLEGATIONS REGARDING THE FEDERAL-COURT CIVIL ACTION

22.  On November 2, 2005, Mitchell filed a civil action in the United States District Court for the District of New Mexico, seeking damages for an allegedly unconstitutional and excessive use of force against Mitchell by O'Brien on November 4, 2002, in alleged violation of 42 U.S.C. § 1983.  The civil action was docketed as Cause No. 05-CV-1155-JB/LAM and was assigned to the Honorable James O. Browning, District Judge, presiding (hereinafter, "Case No. 05-CV-1155").

23.  In Case No. 05-CV-1155, Mitchell was represented at all material times by attorney Dennis W. Montoya, Esq. ("Montoya").

24.  On at least four occasions, four different judges of the United States District Court for the District of New Mexico have sanctioned Montoya for a variety of misconduct and abuse of the judicial process.  See Memorandum Opinion and Order, No. 09-CV-104

(Doc. 34), at 15-19 ("Mr. Montoya is no stranger to court imposed sanctions")("Having failed to learn from the experiences of being sanctioned by Judge Parker, Judge Armijo and Judge Garcia, [Montoya] can now add me [Judge Johnson] to the list of judges who have sanctioned him")(details of four sanctions discussed as imposed by Judges Parker, Armijo, Garcia and Johnson).

25. Prior to filing the Complaint for Civil Rights Violations in Case No. 05-CV-1155, Montoya obtained a physical copy of the entire criminal case file in State of New Mexico v. Mitchell, Case No. D-101-CR-2002-1027, from Mitchell's criminal defense attorneys.

26. Prior to filing the Complaint for Civil Rights Violations in Case No. 05-CV-1155, on information and belief, Montoya had actual knowledge of the details and results of Mitchell's criminal prosecution in State v. Mitchell, Case No. D-101-CR-2002-1027, including but not limited to the District Court's Findings of Fact and Conclusions of Law.

27. Notwithstanding their actual knowledge of the charges, criminal prosecution, trial and felony convictions of Mitchell for aggravated assaults upon Plaintiff O'Brien and Mayre Perez, and of the Court's Findings of Fact and Conclusions of Law, Mitchell and Montoya combined to file a complaint in Case No. 05-CV-1155 that contained false statements and omissions of material fact, including but not limited to making allegations that O'Brien had shot Mitchell in the back as Mitchell was "walking away from" O'Brien and that at the time he was shot, "Mitchell posed no legitimate threat to [O'Brien] or others."

28. The complaint in Case No. 05-CV-1155 omitted any mention of Mitchell's sword, his attack on Mayre Perez, the repeated commands by officers to Mitchell to put down his sword, or Mitchell's three frontal, charging sword assaults on O'Brien, and also failed to mention the criminal charges against Mitchell, his trial on said charges, and his felony convictions, which stemmed from the same body of operative material facts as the civil action.

29. The complaint in Case No. 05-CV-1155 was verified under oath by Mitchell.

30. Mitchell's verification under oath of the complaint constituted perjury.

31. At the time he caused Mitchell's verified complaint to be filed in Case No. 05-CV-1155, Montoya knew that the pleading was false, misleading and perjurious.

32. Mitchell's causes of action in Case No. 05-CV-1155 under 42 U.S.C. § 1983 were barred as a matter of well-settled law by the doctrine of collateral estoppel, which bars the relitigation in a § 1983 civil action of any issue that previously was determined in a state-court criminal case, if the plaintiff had a full and fair opportunity to litigate the issue in the state-court proceeding.

33. At the time he filed the complaint, Montoya prepared blank summonses for the City of Santa Fe and Dennis O'Brian (sic.), whom he incorrectly described in the complaint and summonses as "an Officer of the Santa Fe Police Department."

34. The summons did not state Dennis O'Brian's typed name on the case style as a defendant (as it did on the complaint), but

instead stated "et al." after naming Defendant City of Santa Fe.

35. The summons violated Fed.R.Civ.P. 4(a)(1)(A).

36. On information and belief, Montoya, or a person acting under his direction and control, presented the summonses to the Court Clerk for issuance pursuant to Fed.R.Civ.P. 4(b), and the Clerk issued them for service; upon their issuance, the summonses as issued became official court documents in Case No. 05-CV-1155.

37. On December 29, 2005, Montoya, or a person under his direction and control, filed a Return of Summons in Case No. 05-CV-1155 as to O'Brian (sic.), which alleged that personal service was made on "the defendant" on November 18, 2005, without specifying which Defendant allegedly had been served.

38. The summons in Case No. 05-CV-1155 that Montoya, or a person under his direction, filed along with the Return of Service (which summons became part of the District Court's official file) had been altered and tampered with, from the form issued by the District Court Clerk; specifically, the typed words, "Police Dept." on the summons issued by the Clerk were whited out and replaced with the handwritten words, "County Sheriff's Dept."  See Ex. B.

39. On information and belief, the alteration of the officially-issued summons described in paragraphs 33-38 was known by Montoya at the time he filed the Return of Service.

40. The alteration of the officially-issued summons described in paragraphs 33-38 was material, since O'Brien never worked for the City of Santa Fe or the Santa Fe Police Department, but instead, had worked for the Santa Fe County Sheriff's Department

-9-

continuously from 1994 through his retirement in 2009.

41. On information and belief, the alteration of the officially-issued summons and the filing of an altered summons without appropriate disclosure was intentional and fraudulent, and was perpetrated with the intent to mislead and deceive the Court.

42. O'Brien never was served with any summons and/or complaint in Case No. 05-CV-1155, and he never saw the summons, complaint and/or amended complaint prior to late February 2010.

43. On April 11, 2006, Mitchell through his attorney Montoya filed a Motion for Default Judgment against Dennis O'Brian (sic.), based upon the alleged service of the materially altered summons, and on April 12, 2006, the Court Clerk entered a default. Subsequently, the Court granted the motion and issued an Order.

44. The Order on Plaintiff's Motion for Default Judgment (see Doc. 15), prepared by Montoya for the Court, stated that it was entered against "Defendant Russell Fleming" (who is unknown to Defendants), in addition to "Defendant Dennis O'Brian (sic.)."

45. On April 19, 2006, five months after the purported service of process on Dennis O'Brian (sic.), Mitchell through Montoya filed a First Amended Complaint in Case No. 05-CV-1155, which showed the correct spelling of O'Brien's surname and his correct title as "a Deputy Sheriff with the Santa Fe [County] Sheriff's Department" and named the Board of County Commissioners of the County of Santa Fe (hereinafter, "County") as a defendant, in substitution of the City of Santa Fe.

46. The First Amended Complaint was filed in violation of

-10-

Fed.R.Civ.P. 15(a).

47. The amended complaint repeated verbatim the allegations that Officer O'Brien shot Mitchell in the back as Mitchell was walking away and that at the time he was shot in the back, "Mitchell posed no legitimate threat to [O'Brien] or others." Like the original complaint, the amended complaint omitted any mention of Mitchell's sword, his three frontal attacks on O'Brien or any of the other facts described in paragraphs 7-12 above, and omitted any mention of Mitchell's criminal trial and felony convictions.

48. The amended complaint filed in Case No. 05-CV-1155 alleged that O'Brien was acting within the scope and course of his employment as a Santa Fe County law enforcement officer at all material times.

49. Mitchell through Montoya never served or attempted to serve a copy of the amended complaint on O'Brien, notwithstanding that Montoya had actual knowledge of where O'Brien was employed.

50. Although the Court Clerk, at Montoya's request, issued a summons as to the County, Mitchell through Montoya never served or made any attempt to serve the summons and amended complaint on the Board of County Commissioners or Santa Fe County Clerk, or otherwise give notice to the County of the pending civil action.

51. On information and belief, Montoya intentionally chose not to serve O'Brien or Santa Fe County with the amended complaint because he knew that if he did so, O'Brien and the County would enter their appearances in Case No. 05-CV-1155 and that the true material facts, described in paragraphs 7-19 above, would quickly

come to light, and that Mitchell's pleaded statements of fact would be shown to be false and perjurious and in contradiction of the previously-adjudicated Findings of Fact and Conclusions of Law.

52. Pursuant to the New Mexico Tort Claims Act, Mitchell's allegation as summarized in paragraph 48, above, irrespective of whether or not service of process had been made on Santa Fe County itself and/or its Board of County Commissioners, arguably created a statutory obligation on the part of the County to pay any judgment entered against O'Brien. See §§ 44-4-4(C), 44-4-4(D)(2) NMSA 1978.

53. Subsequently, the Court in Case No. 05-CV-1155 determined that a jury trial was necessary to assess damages against O'Brien.

54. At Montoya's urging and without adversarial input, the Court in Case No. 05-CV-1155 agreed that Mitchell need not give notice to O'Brien of the upcoming jury trial and likewise need not give or serve any notice on Santa Fe County.

55. Mitchell through Montoya never served or attempted to serve copies of any pleadings, motions, notices or other papers filed in Case No. 05-CV-1155 on the County or O'Brien (apart from the purported service of the original summons and complaint on O'Brien) in the two years between filing the action and judgment.

56. On information and belief, Montoya intentionally chose not to serve any papers or give any notice to Santa Fe County or O'Brien because he knew that if he did so, the County and O'Brien would enter their appearances in Case No. 05-CV-1155 and that the true material facts, as described in paragraphs 7-19 above and as

found by Judge Pfeffer beyond a reasonable doubt, would quickly come to light.

57.  On December 10, 2007, the Court in Case No. 05-CV-1155 presided over a jury trial on the issue of damages, without any knowledge, attendance or participation in such proceeding by O'Brien and/or the County.

58.  During the trial, Mitchell, through questioning by Montoya, testified as follows:

> Q [by Mr. Montoya]: What were you doing at that moment [when the first bullet struck Plaintiff's right palm]?
>
> A [by Mitchell]: I was standing, holding the fake sword that I used to drive off my neighbor's Rottweiler, who had attacked me that morning--I did not injure the dog, mind you--and looking out into the sky, spacing out wondering what the weather was going to be like that day.
>
> Q:   Did you see the officer approach you?
>
> A:   No, I did not. His own testimony was that he approached by stealth.  (Transcript of Trial, pp. 20-21)
>
> ***
>
> A:   The first I knew that somebody was standing behind me was when I heard a command to "Put down your weapon," bang, bang, bang.
>
> Q:   What was the bang, bang, bang?
>
> A:   He began firing before he finished the sentence.
>
> Q:   Was there anyone else near you?
>
> A:   Not that I saw.
>
> Q:   Were you facing the officer?
>
> A:   No.  (Transcript of Trial, p. 22)
>
> ***
>
> A:   [O'Brien] shot me without giving me proper warning, shot me in the back, which is generally considered dirty pool, shot

me when I was not a threat to anyone else, altered evidence and concocted an absurd story afterwards to posit the scenario that I had attacked him. (Transcript of Trial, p. 49)

59. Mitchell's testimony as described in paragraph 58 above was perjurious.

60. Mitchell's testimony as described in paragraph 58 above, as elicited by Montoya at trial, was, on information and belief, known by Montoya to be contradicted by previously-adjudicated facts in Case No. D-101-CR-2002-1027 and to be perjurious.

61. Montoya's presentation of Mitchell's testimony to the Court and jury as described in paragraph 58 above was directed to the judicial machinery, corrupted an essential function of the court, and was done with an intent to deceive or defraud the Court.

62. In reliance upon the foregoing and similar testimony, and without any party to cross-examine Mitchell and present the true, previously-adjudicated facts, the jury in Case No. 05-CV-1155 awarded $3 million damages to Mitchell.

63. The Court entered judgment on the verdict. See Doc. 45. This is the judgment that Plaintiffs seek to have set aside.

64. On December 28, 2007, after trial *in absentia* and with his verdict in hand, and after the County's statutory obligation to pay the judgment had ripened, Mitchell through Montoya filed a dismissal of his claims against Santa Fe County.

65. On October 16, 2008, on information and belief, Mitchell died from an accidental fall off a roof in Albuquerque.

66. On July 29, 2009, Montoya filed a Notice of Lis Pendens against Dennis O'Brien, targeting O'Brien's personal residence.

67. Notwithstanding the existence of the judgment, which the County was obligated to satisfy pursuant to the Tort Claims Act, Montoya made no attempt to present it to the County for payment.

68. In late February 2010, Plaintiffs first became aware of the existence of a $3 million judgment against O'Brien from 2007, through media publicity in an unrelated case.

69. On March 23, 2010, after having learning the facts set forth herein, Plaintiffs filed a motion in Case No. 05-CV-1155, which they labelled Independent Action in Equity to Obtain Relief from a Judgment. See Doc. 49.

70. On March 31, 2011, the Court denied the motion without commenting in any way on its merits, but ruling that Plaintiffs needed to initiate their action with a complaint. See Doc. 60.

## COUNT I: DENIAL OF DUE PROCESS TO DENNIS O'BRIEN

71. Plaintiffs adopt and incorporate by reference the allegations set forth in paragraphs 1-70 above.

72. The judgment in Case No. 05-CV-1155 was obtained in violation of the due process rights of O'Brien, as guaranteed by the Fifth Amendment to the United States Constitution.

73. O'Brien had good defenses to the alleged cause of action on which the judgment is founded, including but not limited to the fact that Mitchell's allegations were false and perjurious, as provable by the testimony of multiple eyewitnesses to the events of November 4, 2002, and the doctrine of collateral estoppel which would have barred Mitchell's causes of action from being litigated.

74. Mitchell and Montoya conspired and intentionally engaged

in a pattern of false and fraudulent conduct that prevented O'Brien from obtaining the benefit of his defenses.

75. There was no proximate fault or negligence by O'Brien.

76. O'Brien has no adequate remedy at law.

77. Under the circumstances, the judgment ought not to be enforced in equity and good conscience, and its enforcement would create a grave miscarriage of justice.

78. The Court should set aside and make null and void the judgment (Doc. No. 45 in Case No. 05-CV-1155), vacate the notice of lis pendens (Doc. 46), and award Plaintiffs their costs and a reasonable attorney's fee.

### COUNT II: UNFAIRNESS, INEQUITY AND MISCARRIAGE OF JUSTICE AS TO SANTA FE COUNTY

79. Plaintiffs adopt and incorporate by reference the allegations set forth in paragraphs 1-70 above.

80. The judgment in Case No. 05-CV-1155 was obtained in violation of the fundamental right of the County of Santa Fe as a real party in interest to notice and an opportunity to be heard and present defenses before its liability was adjudicated.

81. The County had good defenses to the alleged cause of action on which the judgment is founded, including but not limited to the fact that Mitchell's allegations were false and perjurious, as provable by the testimony of multiple eyewitnesses to the events of November 4, 2002, and the doctrine of collateral estoppel which would have barred Mitchell's causes of action.

82. Mitchell and Montoya conspired and intentionally engaged

in a pattern of false and fraudulent conduct that prevented the County from obtaining the benefit of its defenses.

83. There was no proximate fault or negligence by the County.

84. The County has no adequate remedy at law.

85. Under the circumstances, the judgment ought not to be enforced in equity and good conscience, and its enforcement would create a grave miscarriage of justice.

86. The Court should set aside and make null and void the judgment (Doc. No. 45 in Case No. 05-CV-1155), vacate the notice of lis pendens (Doc. 46), and award Plaintiffs their costs and a reasonable attorney's fee.

## COUNT III: FRAUD UPON THE COURT

87. Plaintiffs adopt and incorporate by reference the allegations set forth in paragraphs 1-70 above.

88. The judgment in Case No. 05-CV-1155 was obtained through a deliberate, intentional scheme by Mitchell and his attorney Montoya, acting together in a combination and conspiracy, to deceive and defraud the Court and to pervert and corrupt the fair and impartial functioning of the judicial machinery.

89. Under the circumstances, the judgment ought not to be enforced in equity and good conscience, and its enforcement would create a grave miscarriage of justice.

90. The Court should set aside and make null and void the judgment (Doc. No. 45 in Case No. 05-CV-1155), vacate the notice of lis pendens (Doc. 46), and award Plaintiffs their costs and a reasonable attorney's fee and other relief as appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all issues so triable.

**REQUEST FOR RELIEF**

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request the Court:

1. To set aside and make entirely null and void the judgment (Doc. No. 45 in Case No. 05-CV-1155);

2. To vacate the notice of lis pendens (Doc. 46);

3. To award Plaintiffs their costs and attorney's fee; and

4. To grant whatever other relief, equitable or otherwise, the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/
_____
**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, New Mexico 87504
(505) 989-9360
**Attorney for Plaintiffs
Dennis O'Brien and
Board of County Commissioners
of Santa Fe County**