IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS O'BRIEN and
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,

      Plaintiffs,

vs.                                        No. 11-CV-409 JB/WDS

DAVID E. MITCHELL,
Personal Representative
of the Estate of Walter Mitchell, Deceased,

      Defendant.

## MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs, by Michael Dickman, Attorney at Law, pursuant to Fed.R.Civ.P. 56 and 60(d)(3), and respectfully move the Court to enter summary judgment in their favor and against Defendant as to Count III of their Complaint to Set Aside Judgment ("Complaint") (Doc. 1), which seeks to set aside and make null and void a judgment entered by the United States District Court for the District of New Mexico in the civil action entitled Mitchell v. County of Santa Fe and O'Brien, Cause No. 05-CV-1155-JB/LAM (see Doc. No. 45), on grounds of fraud on the Court.

THE GROUNDS for this motion are that there is no genuine issue as to any material fact related to fraud on the Court, and the undisputed evidence shows that the Plaintiffs are entitled to the vacation of the aforementioned judgment, which was procured through a fraud upon the Court perpetrated by the Defendant's decedent, Walter Mitchell, and his attorney Dennis W. Montoya, acting in concert to pervert justice.[1]

---

[1] Walter Mitchell died from causes unrelated to his lawsuit sometime after entry of the judgment in 2007. See Doc. 51, p. 8, in Case No. 05-CV-1155.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues to justify a trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

The nonmoving party cannot rest on mere denials, or simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts.  Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Moreover, disputes about material facts must be "genuine" to prevent entry of summary judgment; that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  Id.  Put differently, the nonmoving party "must do more than merely show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).  And it is clear that summary judgment is not a "disfavored procedural shortcut," but rather is "an integral part of the Federal Rules as a whole," Celotex Corp., supra, 477 U.S. at 327.

## SUMMARY OF PROCEEDINGS[2]

On April 22, 2004, following a two-day non-jury trial, the First Judicial District Court of the State of New Mexico convicted Walter Mitchell of aggravated assault against a peace officer (Santa Fe County Sheriff's Deputy Dennis O'Brien), a felony, and aggravated assault with a deadly weapon, a felony, based upon an incident that occurred in Santa Fe County on November 4, 2002. The Court entered Findings of Fact, expressly supported by evidence beyond a reasonable doubt, and Mitchell waived his right to appeal. See Facts Nos. 7-10, infra; Ex. A.

On November 2, 2005, Walter Mitchell, represented by attorney Dennis W. Montoya, filed a Complaint for Civil Rights Violations in the United States District Court for the District of New Mexico, Cause No. 05-CV-1155, alleging the use of unconstitutional, excessive force against him under 42 U.S.C. § 1983 based upon the November 4, 2002 incident for which he had been convicted, and supervisory liability against the City of Santa Fe. Mitchell named as defendants the City of Santa Fe, a municipal entity, and its subsidiary Police Department, and Dennis O'Brian (sic.), described as "an officer of the Santa Fe Police Department." Summonses were issued by the Clerk of the Court. There is a dispute concerning whether Sheriff's Sergeant Dennis O'Brien, a Plaintiff herein, ever was served with a copy of the summons and complaint. Mitchell filed a return of summons as to O'Brien which, as discussed herein,

---

[2] These facts are set forth in more detail, along with supporting evidence, in the Statement of Undisputed Material Facts.

had been altered from the issued form with liquid paper (white-out) and a hand written notation to reflect, correctly, that O'Brien was an officer of the Santa Fe County Sheriff's Department, rather than with the City of Santa Fe Police Department, as had been typed on the original, court-issued summons.

No Defendant appeared in the action. Subsequently, Mitchell, without leave of court, filed an amended complaint which was identical to the original complaint, except that it reflected the correct spelling of O'Brien's surname; his correct employment as Deputy County Sheriff; and substituted the County of Santa Fe and the Santa Fe County Sheriff's Department for the City of Santa Fe and City Police Department. It is not disputed that Mitchell never made service of the amended complaint on either party, and never served any subsequent papers on any party during the proceedings.

It also is undisputed that neither the original complaint nor Mitchell's amended complaint mentioned, or alluded to in any way, Mitchell's criminal prosecution, trial and convictions, which were based on the very same acts on which he now was suing.

In due course, Mitchell obtained a default judgment against O'Brien. On December 10, 2007, without notice to any defendant, the Court conducted a jury trial on the issue of damages, at which Mitchell testified under examination by attorney Dennis W. Montoya. No defendant appeared or was represented at trial. At the conclusion of the case, the jury awarded Mitchell $3 million in compensatory and punitive damages against Sgt. Dennis O'Brien, who was the victim of Mitchell's aggravated assault. See Doc. No. 45.

-4-

On December 31, 2007, the Court entered Final Judgment on the verdict (which is the judgment sought to be vacated).

Approximately 27 months later, on March 23, 2010, O'Brien and the Board of County Commissioners of Santa Fe County, the Plaintiffs herein, filed in Cause No. 05-CV-1155 a motion entitled "Independent Action in Equity to Obtain Relief from a Judgment" in which, pursuant to Rule 60(d)(1) and the common law, they sought to set aside and vacate the judgment "in order to prevent a grave miscarriage of justice." See Doc. No. 49. The motion was briefed and orally argued before the Honorable James O. Browning, who issued a Memorandum Opinion and Order in which the Court denied the motion *qua* motion and held that the movants instead should file an independent action with a complaint, summons, discovery, etc., rather than a motion See Doc. No. 60, filed on March 31, 2011. The Court made clear that by its ruling, it "[did] not comment in any way on the merits" of any substantive issues raised; the ruling was strictly procedural in nature. The action at bar followed.

## INSTANT MOTION

The motion at bar is based only on Count III (Fraud upon the Court). The motion does not seek summary judgment on Counts I and/or II. If the Court grants the motion, Counts I and II would become redundant and moot, since those counts seek the same relief (vacation of the judgment) on different, independent grounds: Denial of Due Process to Plaintiff Dennis O'Brien (Count I), and Unfairness, Inequity and Miscarriage of Justice as to Plaintiff Santa Fe County (Count II).

**STATEMENT OF MATERIAL FACTS**

The record in Case No. 05-CV-1155 and the attached affidavits and exhibits demonstrate that the following facts are undisputed.[3]

## The November 4, 2002 incident which forms the basis of the judgment sought to be vacated

1. On November 4, 2002, Walter Mitchell ("Mitchell"), after voluntarily consuming an excessive dose of medication that apparently caused him to become psychotic and/or hypomanic, attacked his neighbor's dogs with a sword in Santa Fe, New Mexico and almost struck the young neighbor (Mayre Perez) with his sword. Ms. Perez, believing that Mitchell might strike her, called her parents, who in turn called 911. See Ex. A (certified copy, Court's Findings of Fact and Conclusions of Law, State v. Mitchell, First Judicial District Court, State of New Mexico, Santa Fe County No. D-101-CR-2002-1027), at ¶¶ 1-17.

2. Sgt. Dennis O'Brien, Deputy Sheriff Rafael Rodriguez, Deputy Sheriff Fred Borman and Deputy Sheriff Billy Smith, all employed by the Santa Fe County Sheriff's Department, were dispatched to the scene. When the four Sheriff's deputies arrived, the neighbor's father, Filiberto Perez, was holding Mitchell at bay with a piece of pipe. See Ex. B (Criminal Complaint, Statement of Probable Cause and Witness Statements).

---

[3] Because Plaintiffs have incorporated by reference their motion and reply in Case No. 05-CV-1155 (Doc. Nos. 49 and 52), and to avoid confusion, Plaintiffs in this motion have continued the numbering of the exhibits, so as not to duplicate. Copies of some of the significant exhibits filed in Case No. 05-CV-1155 have been re-filed as part of the instant motion and attached hereto, while some of the other previously-filed exhibits are merely referenced.

3.    Sgt. O'Brien was the lead deputy.  See Ex. A, ¶ 19.

4.    Upon their arrival, the deputies instructed Mitchell to put down his sword but Mitchell, instead, removed the sword from the scabbard and held it in a threatening manner.  The deputies continually instructed Mitchell to put down his sword but Mitchell refused to comply.  Twice during this time, Mitchell advanced on Sgt. O'Brien while wielding his sword in a threatening manner but then retreated; both times, Sgt. O'Brien believed that Mitchell intended to attack him with the unsheathed sword.  Then, Mitchell began to advance more quickly on Sgt. O'Brien a third time, and Sgt. O'Brien, facing Mitchell, began to back up as Mitchell continued to advance upon him with his sword.  Finally, O'Brien backed into a parked vehicle, retreating as far as possible, and thereupon shot Mitchell three times as Mitchell came towards him. See Ex. A, ¶¶ 18-32.  The deputies then arrested Mitchell.

5.    Mitchell made statements during the incident regarding the Apocalypse and stated, "I hate cops."  During his third and final attack on Sgt. O'Brien, Mitchell held his sword with one hand on the grip and the other against his palm, with the blade facing outward and toward Sgt. O'Brien; while quickening his pace towards Sgt. O'Brien, Mitchell had a look of rage in his eyes.  See Ex. B.

6.    In addition to Mitchell, seven eyewitnesses observed the incident described in paragraphs 1-5 above, including Mitchell's raging, psychotic sword charge on Sgt. O'Brien; Sgt. O'Brien's retreat by backing up into a parked car; and the discharge of the officer's firearm into the front of Mitchell's advancing body:

-7-

Dennis O'Brien, Rafael Rodriguez, Fred Borman, Billy Smith, the neighbor Mayre Perez (an eleventh grader at the time), and her parents Filiberto Perez and Margarita Perez. See Ex. B.

## Mitchell's trial and conviction in state court
## based on the November 4, 2002 incident

7.    On November 15, 2002, the Grand Jury of Santa Fe County indicted Mitchell for two felonies, based on the events described in paragraphs 1-5: aggravated assault upon a peace officer (e.g. Sgt. O'Brien), and aggravated assault with a deadly weapon, to wit: a sword, on the child Mayre Perez. See Ex. C (certified copy of indictment).

8.    On March 16-18, 2004, following a bench trial at which Mitchell was represented by two defense attorneys, Mark Donatelli and John Day, Mitchell was convicted beyond a reasonable doubt of both of the felony charges, and was found guilty but mentally ill. See Ex. D (certified copy of judgment); Ex. A, ¶ 8.

9.    Subsequently, Mitchell waived his right to appeal the two felony convictions. See Ex. E (certified copy of waiver).

10.   The state court's Findings of Fact and Conclusions of Law (Ex. A) expressly stated that Dennis O'Brien was a deputy of the Santa Fe County Sheriff's Department, not a city police officer, and that all of the responding officers were Sheriff's deputies, not City of Santa Fe policemen. See Ex. A, ¶¶ 18-20, 22.

## Mitchell's sentencing in state court

11.   On May 7, 2004, Judge Pfeffer held a sentencing hearing. During the hearing, Mitchell addressed the Court, and made the

-8-

following statements regarding the incident on which he had been convicted, set forth in paragraphs 1-5 above:

> MITCHELL [Addressing the Court]:   I suppose I should first address the issue of whether or not I feel remorse. There is no doubt in my mind that I started the ball rolling that morning.  I believe a person is responsible for their own actions, that it's possible to stay out of trouble.  I very obviously failed to do so.  The extent of my regret is very difficult to express.  I, this has been a shattering experience and if you have heard my prayers in the last several months you'd know my remorse. I feel bad about the whole thing.  I've never been so ashamed in my life. I don't know what to say, your Honor. . . .
>
>                               ***
>
> COURT:   How do you feel about the trauma to which you subjected Officer O'Brien?
>
> MITCHELL: That was a horrible thing to do.  The sheer madness of the act, if anybody had attacked me with a sword, it's totally over the top, what I did, what I apparently did.  The -- I don't want to hurt anybody, your Honor, and the notion of attacking four armed police officers with a sword is perfectly insane.  I think about the definition and the staggering quality of the offense, given that if I'd been shot dead that would have been all good and fair. . . .
>
> MITCHELL: I'm sorry I put him [Officer O'Brien] through the trauma.  . . .
>
> MITCHELL: [Apparently addressing Sgt. O'Brien in the courtroom] Please accept my sincere apologies.  I didn't mean to traumatize you.   I didn't, I surely had no conscious intent of killing you or hurt[ing] anyone.

See Ex. O, pp. 2-4.

    12.   At the conclusion of the hearing, Judge Pfeffer sentenced Mitchell to 4½ years of incarceration, with 4½ years suspended upon 4½ years of supervised probation.  See Ex. D.

## Mitchell's post-conviction civil action in federal court (Cause No. 05-CV-1155) based on the November 4, 2002 incident

    13.   Mark H. Donatelli is a principal in the law firm of

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienenu, LLP, and he has practiced law in New Mexico since 1976.  See Ex. P, ¶ 3.

14.   Mr. Donatelli represented Mitchell in the criminal case of <u>State of New Mexico v. Mitchell</u>, Case No. D-101-CR-2002-1027. After they were entered, he provided Mitchell with a copy of the state court's Findings of Fact and Conclusions of Law (Ex. A in case at bar).  See Ex. P, ¶¶ 4-5.

15.   Sometime after the criminal case had been concluded, attorney Dennis W. Montoya contacted Mr. Donatelli's office and made arrangements to come to the office and examine the file from the criminal case, which included copies of the pleadings and other filed documents, including the state court's Findings of Fact and Conclusions of Law (Ex. A in case at bar).  See Ex. P, ¶ 8.

16.   While at the office, Mr. Donatelli spoke to Mr. Montoya about the criminal case.   Mr. Montoya indicated that he was planning to sue Officer Dennis O'Brien on Mitchell's behalf for damages based on the incident that was the basis of Mitchell's criminal convictions. Mr. Donatelli observed Mr. Montoya in one of the firm's conference rooms, and saw him using a portable scanning device to scan in documents from the firm's criminal case file, which file included a copy of Exhibit A.  See Ex. P, ¶ 8.

17.   Prior to filing a civil action, both Walter Mitchell and Dennis W. Montoya had knowledge of Mitchell's criminal prosecution and conviction in <u>State v. Mitchell</u>, No. D-101-CR-2002-1027, and the state court's Findings of Fact and Conclusions of Law in that case, expressly made based on proof beyond a reasonable doubt

-10-

(Ex. A in the case at bar).  See Ex. P, ¶¶ 5-8.

18.  On November 2, 2005, Mitchell, by Mr. Montoya, filed a civil action in the United States District Court for the District of New Mexico, docketed as Cause No. 05-CV-1155, alleging the use of unconstitutional force against Mitchell under 42 U.S.C. § 1983 based upon the November 4, 2002 incident for which he had been convicted, and supervisory liability against the City of Santa Fe. See Case No. 05-CV-1155-JB/LAM, Doc. 1.  Mitchell's complaint named as defendants the City of Santa Fe, a municipal entity and its "subsidiary", the Santa Fe Police Department; and Dennis O'Brian (sic.), alleged to be an Officer of the Santa Fe Police Department, individually.[4]

19.  Mitchell's action was based on the November 4, 2002 incident described in paragraphs 1-5 above.  The complaint alleged that Officer O'Brian (sic.) shot Mitchell in the back as Mitchell was walking away from the officer and that at the time he was shot, "Plaintiff posed no legitimate threat to Defendant or others."  See Doc. 1 ¶ 11.  The complaint alleged that Defendant O'Brian (sic.) "at all relevant times herein, was a law enforcement officer employed by the Santa Fe Police Department" and that at all material times, Defendant O'Brian (sic.) "was acting within the scope and course of his employment and under color of state law." See Case No. 05-CV-1155-JB/LAM, Doc. 1 at ¶¶ 4-7.  The complaint omitted any mention of Mitchell altercation with the child,

---

[4] Plaintiff filed his action two days prior to expiration of the applicable 3-year statute of limitations.  See Garcia v. Wilson, 731 F.2d 640 (10th Cir. 1984), aff'd, 471 U.S. 261 (1985).

Mitchell's sword, the stand-off with deputies dispatched to the scene by 911, Mitchell's frontal attacks on Sgt. O'Brien, or any of the other facts described in paragraphs 1-5, and omitted any mention of Mitchell's criminal indictment, trial and conviction.

20. The complaint was verified under oath by Mitchell. See Case No. 05-CV-1155-JB/LAM, Doc. 1, p. 9 (Verification).

21. The City of Santa Fe and the Santa Fe Police Department had no involvement whatever in the events of November 4, 2002, described in paragraphs 1-5 above; all responding officers were Sheriff's deputies and a Sheriff's sergeant. See Ex. A, ¶¶ 18-20.

22. Sgt. Dennis O'Brien never has worked for the City of Santa Fe, as a police officer or otherwise. See Ex. J at ¶¶ 3-4, Case No. 05-CV-1155.

23. Prior to filing the complaint in Case No. 05-CV-1155, Mitchell and Mr. Montoya knew that the Santa Fe Police Department had no involvement in the subject incident, and that Dennis O'Brien was a sergeant with the Santa Fe County Sheriff's Department, rather than an officer of the City of Santa Fe Police Department. See Ex. A at ¶¶ 18-20; see Material Fact Nos. 10, 14-17, above.

24. In Case No. 05-CV-1155, Montoya on behalf of Mitchell prepared a typed summons for "Officer Dennis O'Brian (sic.), Santa Fe Police Dept." See the unissued summons, filed as an attachment to the complaint; Case No. 05-CV-1155, Doc. 1-2.

25. The unissued summons prepared by Montoya reflected the following procedural anomaly: the case style on the summons did not expressly include Dennis O'Brian's typed name as a "Defendant" (as it does on the complaint), but instead merely stated "et al." after

-12-

expressly naming Defendant City of Santa Fe; thus, O'Brian's name did not appear in the case name on the summons as a defendant.[5]

26.  There is a genuine dispute as to whether Dennis O'Brien, a Plaintiff and movant herein, was served with the summons and a copy of the complaint (Doc. No. 1 in Case No. 05-CV-1155).[6]

27.  On December 29, 2005, Montoya on behalf of Mitchell filed a Return of Summons as to Defendant O'Brian (sic.), stating that personal service was made on "the defendant" on November 18, 2005, without identifying which of the two named defendants had been served (Defendant City of Santa Fe or Defendant Dennis O'Brian). See Ex. F.  The summons filed as part of the return was altered: the typed words "Police Dept." had been whited out, and were replaced with the handwritten words "County Sheriff's Dept." after the typed words, "Santa Fe."  See Ex. F; compare with the unissued summons, attached as Ex. H (which was filed as Case No. 05-CV-1155, Doc. 1-2).[7]

28.  The handwriting reflected on p. 1 of Ex. F, wherein the

---

[5] By using the phrase "et al." as opposed to expressly naming Defendant Dennis O'Brian (sic.) in the case name, the summons violated Fed.R.Civ.P. 4(a)(1)(A), which requires a summons to name "the court and the parties" (plural; emphasis added), and to be directed to a specific defendant.

[6] Regarding this dispute, Plaintiffs hereby adopt and incorporate by reference the motion papers, affidavits and exhibits filed in Case No. 05-CV-1155-JB/LAM, Doc. Nos. 49, 51, and 52.  See in particular, Doc. Nos. 49-6 through 49-10.

[7] Undersigned counsel arranged to have the original of the Return of Summons bearing the handwritten words on top of the whited-out typewritten words (a copy of which is attached as Ex. F) transferred from the Tenth Circuit Court of Appeals Clerk in Denver to the District Court's Clerk's Office in Albuquerque where, on information and belief, it remains in the Clerk's possession.

typed words "Police Dept." were whited out and replaced with "County Sheriff's Dept.", is not the handwriting of the person who signed the return; and that person (then Sergeant, now Major, Kenneth Johnson) does not know who wrote such words, nor when they were written. See Case No. 05-CV-1155, Doc. 7 (Ex. G) at ¶ 5; see attached Ex. F; compare Ex. F with attached Ex. H.

29. Dennis O'Brien did not appear in Case No. 05-CV-1155; although disputed, he has stated under oath that he never was served with a summons and copy of the complaint in No. 05-CV-1155. See Case No. 05-CV-1155, Doc. No. 49-10.

30. On April 11, 2006, Montoya on behalf of Mitchell in the filed a Motion for Default Judgment against Dennis O'Brian (sic.) in Case No. 05-CV-1155; and on April 12, 2006, the Court Clerk entered a default. See Case No. 05-CV-1155, Docs. 6, 12. Subsequently, the Court granted the motion and issued an Order. See Case No. 05-CV-1155, Doc. No. 15.[8]

31. On April 19, 2006, five months after the purported service of process on Dennis O'Brian (sic.), Montoya on behalf of Mitchell filed a First Amended Complaint. See Case No. 05-CV-1155, Doc. No. 12.[9]

32. Mitchell's amended complaint showed the correct spelling of Dennis O'Brien's name and his correct title as a Deputy Sheriff

---

[8] The Order reflects that Plaintiff sought a default judgment against "Defendant Russell Fleming" but then goes on to grant default judgment against "Defendant Dennis O'Brian" (sic.), rather than Russell Fleming.

[9] Plaintiff filed his amended complaint without consent or leave of the court, in violation of Fed.R.Civ.P. 15(a).

of the Santa Fe County Sheriff's Department, and also named the Board of County Commissioners of the County of Santa Fe as a defendant, in substitution of the City of Santa Fe.  See Doc. 12, style of case, and ¶¶ 4-7.  The amended complaint repeated verbatim the allegations that Officer O'Brien had shot Mitchell in the back as Mitchell was walking away and that at the time he was shot in the back, Mitchell posed no legitimate threat to anybody.  Compare Case No. 05-CV-1155, Doc. 1 at ¶ 11 with Doc. 12 at ¶ 11.  Like his first complaint, Mitchell's amended complaint omitted any mention of Mitchell's sword, Mitchell's sword attacks on O'Brien, or any of the other facts described in paragraphs 1-5, and omitted any mention of or allusion to his criminal trial and conviction for aggravated assault on Dennis O'Brien, a felony.

33.    The amended complaint alleged that Defendant O'Brien was acting within the scope and course of his employment as a law enforcement officer of Santa Fe County and that he acted under color of state law at all material times.  See Doc. 12, ¶ 5.[10]

34.    Montoya on behalf of Mitchell never served a copy of the amended complaint on Defendant Dennis O'Brien.  Although the Clerk issued a summons as to Defendant Board of County Commissioners (see unnumbered docket entry in Case No. 05-CV-1155, April 20, 2006), Mitchell never made service on the Board of County Commissioners or

---

[10] Pursuant to the New Mexico Tort Claims Act, Mitchell's allegation as summarized in paragraph 33, above, irrespective of whether or not service of process had been made on Santa Fe County itself and/or its Board of County Commissioners, created an obligation to pay any judgment entered against Sgt. Dennis O'Brien. See NMSA 1978, Sections 44-4-4(C), 44-4-4(D)(2).

the County Clerk. See Docket Sheet, reflecting no return of service; see Clerk's Minutes (Case No. 05-CV-1155, Doc. 31, pp. 1, 3), wherein Montoya informed the Court that he had "chosen" not to serve "the County Defendants at this time").

35. On December 10, 2007, the Court, Browning, D.J., presided over a jury trial on the issue of damages, without attendance or participation by either Defendant O'Brien or Defendant County.

36. On information and belief, if the instant case had gone to trial on the merits, Defendants would have called most or all of the seven eyewitnesses to testify at trial. See Fact No. 6, above. On information and belief, all such eyewitnesses would have testified to Mitchell's frontal attack on Sgt. O'Brien while O'Brien, moving backwards, backed into a parked vehicle prior to firing his gun as Mitchell had continued to advance upon him at a quickened pace.

37. Mitchell testified at trial in Case No. 05-CV-1155, examined by his attorney Dennis W. Montoya and not subject to cross examination, and testified about the underlying facts as follows:

Q [by Montoya]:    What were you doing at that moment [when the first bullet struck]?

A [by Mitchell]: I was standing, holding the fake sword that I used to drive off my neighbor's Rottweiler, who had attacked me that morning--I did not injure the dog, mind you--and looking out into the sky, spacing out wondering what the weather was going to be like that day.

Q:   Did you see the officer approach you?

A:   No, I did not. His own testimony was that he approached by stealth.

(Transcript of Trial, pp. 20-21, Ex. N, attached hereto)

-16-

\*\*\*

A:    The first I knew that somebody was standing behind
me was when I heard a command to "Put down your weapon,"
bang, bang, bang.

Q:    What was the bang, bang, bang?

A:    He began firing before he finished the sentence.

Q:    Was there anyone else near you?

A:    Not that I saw.

Q:    Were you facing the officer?

A:    No.

(Ex. N, p. 22)

A:    [O'Brien] shot me without giving me proper warning, shot
me in the back, which is generally considered dirty pool, shot
me when I was not a threat to anyone else, altered evidence
and concocted an absurd story afterwards to posit the scenario
that I had attacked him.

(Ex. N, p. 49)

38.   The jury returned a verdict in favor of Mitchell in the

amount of $3 million, including punitive damages, and the Court

entered final judgment on the verdict.  See Case No. 05-CV-1155,

Docs. Nos. 43-45.

39.   On December 28, 2007, after trial *in absentia* and with

his verdict in hand, Mitchell filed a dismissal without prejudice

of his claims against Defendant Santa Fe County.  See Doc. No. 44.

40.   On July 29, 2009, Mitchell filed a Notice of Lis Pendens

against Dennis O'Brien.  See Case No. 05-CV-1155, Doc. No. 47.  The

notice targeted Mr. O'Brien's personal residence in Santa Fe.

41.   In late February 2010, Plaintiffs (Dennis O'Brien and

County of Santa Fe) first became aware of the proceedings and the

-17-

existence of a $3 million judgment against O'Brien from 2007, by its disclosure in an unrelated case and resulting media publicity. See Case No. 05-CV-1155, Doc. 10 (Ex. J) at ¶ 5.

## Ethical misconduct, use of perjury, and dishonesty to the Court in other cases, by attorney Dennis W. Montoya

42. As previously noted, the action at bar was filed on Mitchell's behalf by attorney Dennis W. Montoya ("Montoya").

43. On November 9, 2011, the New Mexico Supreme Court suspended Montoya from the practice of law based on what the Court called "a deeply troubling mosaic of ethical misconduct" that "unquestionably calls for discipline and seriously calls into question Montoya's fitness to practice law[]" including deliberate, false statements of fact and omissions of material facts made to courts and other misuse of the judicial process; one of Montoya's numerous affirmative acts discussed by the Supreme Court in deciding to suspend Montoya was "when he [Montoya] altered deposition testimony to favor his client." See In re Montoya, 2011-NMSC-042, ¶¶ 1, 37, - N.M. - , 266 P.3d 11, 14, 20 (2011).

44. On multiple occasions, the United States District Court for the District of New Mexico has sanctioned or chided Montoya for a variety of misconduct and abuses of the judicial process. See Memorandum Opinion and Order, No. 09-CV-104 (Doc. 34), at 15-19 ("Mr. Montoya is no stranger to court imposed sanctions[;]" four sets of sanctions discussed as imposed by Judges Parker, Armijo, Johnson and Garcia); see also Archibeque, infra (Judge Hansen); Memorandum Opinion and Order, Case No. 08-CV-323-JCH/CG (Doc. 51)

-18-

at n. 4, p. 11 (citing Montoya's use of an altered quotation in a brief as "disturbingly misleading at best")(Judge Herrera).

45. The Tenth Circuit Court of Appeals, too, has commented on, and affirmed the imposition of, various sanctions imposed upon Montoya and his clients for various kinds of proven misconduct, including Holguin v. Burge, 340 Fed.Appx. 250 (10th Cir. 2007) (affirming New Mexico District Court's dismissal with prejudice of claims as sanction for "perjury, discovery delays, and failure to serve [a named defendant]"; Court of Appeals implied that the "misconduct" was by Montoya, not by the plaintiffs; see n. 3); McGuinness v. University of New Mexico School of Medicine, 170 F.3d 974, 980 (10th Cir. 1998)(affirming Magistrate Judge's imposition of sanctions on Montoya for violating a court order forbidding Montoya from having ex parte contact with a named witness); Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., 70 F.3d 1172 (10th Cir. 1995)(affirming New Mexico District Court's sanction of dismissal with prejudice of complaint based on the plaintiff's "willful conduct" including "repeatedly perjur[ing] herself"); see also Chavez v. City of Albuquerque, 402 F.3d 1039 (10th Cir. 2007) (affirming New Mexico District Court's sanction of dismissal with prejudice of complaint based on the plaintiff's repeated perjury; opinion unclear as to Montoya's knowledge and/or participation in the repeated instances of his client's perjurious testimony during discovery and during direct examination, by Montoya, at trial).

46. Separate and apart from the case at bar, Montoya has engaged in a pattern and practice of ethical misconduct and misuse

-19-

of the judicial process including the use of perjured testimony. See Material Facts Nos. 43-45, above.

## THE ISSUE OF SERVICE OF PROCESS

Although it is undisputed that the County of Santa Fe was never served with process in Case No. 05-CV-1155, there is a genuine dispute as to whether Dennis O'Brien was, or was not, served with a summons and a copy of the original complaint.[11] However, as argued herein, the issue of service of process, and the Court's personal jurisdiction over O'Brien, is irrelevant to the alleged fraud on the court raised by the motion at bar. As argued, a default does not constitute a license to obtain a verdict through the knowing, deliberate presentation of perjured testimony.

## ARGUMENT AND AUTHORITY

This action is based upon a long-established doctrine that predates the Federal Rules of Civil Procedure but is expressly recognized therein, called an independent action in equity to obtain relief from a judgment. See Fed.R.Civ.P. 60(d)(1); Tates v. Beggerly, 524 U.S. 38, 45-47 (1998); see Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2868 ("Wright, Miller").

The independent action is equitable in nature, directed to the sound discretion of the court, may be brought in the court in which

---

[11]     The evidence is undisputed that Mitchell never served O'Brien with a copy of the amended complaint and never served any complaint on the Santa Fe County Board of County Commissioners, and that O'Brien was never notified about the jury trial on damages. See Doc. No. 31 in Case No. 05-CV-1155 (Clerk's Minutes); see Memorandum Opinion and Order in Case No. 05-CV-1155, Doc. No. 18.

the judgment was rendered (or in another court), and is not limited by any specific time deadline for its filing, other than laches. See Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1273-75 (10th Cir. 1995), cert. denied 516 U.S. 1045 (1996); Winfield Associates, Inc. v. Stonecipher, 429 F.2d 1087, 1090-91 (10th Cir. 1970); Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir. 1969); Tates v. Beggerly, supra. Resort to the independent action is to be utilized only in "unusual and exceptional circumstances," Crosby v. Mills, supra, 413 F.2d at 1276, and in order "to prevent a grave miscarriage of justice[,]" Tates v. Beggerly, supra, 524 U.S. at 47.

Fraud is a cognizable ground for relief through the independent action in equity to obtain relief from a judgment, and indeed, is the most common ground. See Wright, Miller at § 2868; Official Notes to Fed.R.Civ.P. 60(d)(1).

Fraud on the court--which is the subject of Count III of the Complaint, and the motion at bar--is another, separate basis for vacating a judgment, although it may be raised through the independent action. The courts have inherent power to vacate a judgment that has been obtained by fraud on the court. See Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946); Chavez v. City of Albuquerque, 402 F.3d 1039, 1043-44 (10th Cir. 2007)(case involving client of attorney Dennis W. Montoya). There is no time limit on setting aside a judgment so obtained, and neither laches nor unclean hands can bar the court's consideration of the matter; moreover, the court may raise the matter on its own motion, even in the absence of any request to do so from a party to

-21-

the judgment. See Wright, Miller, § 2870 ("Fraud on the Court"), p. 412.[12]

"Almost all of the principles that govern a claim of fraud on the court are derived from the Hazel-Atlas case." Wright, Miller, Civil 2d § 2870, p. 411. In Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944), the Supreme Court faced a case in which the Circuit Court of Appeals had affirmed the validity of a patent based in part on an article published in a trade journal, ostensibly by a disinterested expert. Subsequently, evidence was uncovered that, in fact, one of the patent holder's attorneys, rather than the expert who had signed his name to the article, was the true author. Although (1) the opposing party had received information about the spurious article "several years previously" but had failed to investigate it until after judgment was entered, thereby arguably not exercising what the Circuit Court called "proper diligence"; (2) the district court had not relied upon the article at all; and (3) the Circuit Court of Appeals had concluded that the article was not "basic" to its affirmance of the patent, the Supreme Court ordered the judgment set aside. The Court held:

[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence

---

[12] The Tenth Circuit Court of Appeals frequently cites to and relies upon Wright, Miller § 2870 in discussing fraud on the court. See, i.e., United States v. Buck, 281 F.3d 1336, 1341-42 (10th Cir. 2002).

> of litigants. The public welfare demands that the
> agencies of public justice be not so impotent that they
> must always be mute and helpless victims of deception and
> fraud.

See Hazel-Atlas Glass Co., supra, 322 U.S. at 246.

The Supreme Court emphasized that "[e]quitable relief against fraudulent judgments" was a "judicially devised remedy" that is "characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations." Id., 322 U.S. at 248; see also for accord Universal Oil Products Co. (1946) supra; Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

The Tenth Circuit has recognized that a federal court's "inherent power" to "set aside fraudulently begotten judgments" (Chambers v. NASCO, Inc., supra, 501 U.S. at 44) applies where the judgment in question rests upon a plaintiff's perjury, and that such perjury constitutes a fraud upon the court. See Chavez v. City of Albuquerque, supra, 402 F.3d at 1043-44. Ironically (or probably not), the perjury at issue in the Chavez case was by Dennis W. Montoya's plaintiff client; the substantive claim there, as here, was the alleged use of excessive force by a police officer brought under 42 U.S.C. § 1983. In Chavez, however, the perjury was uncovered during the cross examination of the plaintiff; here, of course, there was no adverse party to expose Mitchell's lies.

The evidence here shows that the $3 million Final Judgment, unbeknownst to the Court until the instant post-trial proceeding and irrespective of the service issue, rests upon fraud, perjury

-23-

and a deliberate scheme to manipulate the judicial machinery.

The undisputed evidence demonstrates that both Mitchell and his attorney Dennis W. Montoya were aware, before they filed the civil action, that Mitchell had been indicted, tried and ultimately convicted beyond a reasonable doubt of attacking Dennis O'Brien. Both Mitchell and Montoya had actual knowledge of the state court's Findings of Fact and Conclusions of Law (Ex. A in case at bar), which made indisputably clear, among other things, that O'Brien was a Santa Fe County Sheriff's Deputy, not a City police officer, and that Mitchell had attacked O'Brien three times with a sword, charging him while O'Brien backed up in retreat until O'Brien physically could retreat no further and, as Mitchell then quickened his pace and continued to ignore repeated orders to drop his sword, O'Brien finally was forced to shoot Mitchell in self defense. See Facts Nos. 1-5, 14-17. No honest person (party or attorney) could read the state court's Findings of Fact and Conclusions of Law and be confused, to any extent whatsoever, as to the true facts.

Indeed, the true facts were acknowledged by Mitchell during his sentencing, when he told Judge Pfeffer (in a successful attempt to obtain probation rather than incarceration) that "there is no doubt in my mind that I started the ball rolling that morning" and that "attacking four armed police officers with a sword" as he had done that day was "sheer madness" and "perfectly insane" and "totally over the top" and "a horrible thing to do" and that if he had been shot dead by O'Brien rather than wounded, "that would have been all good and fair." Mitchell then told Deputy Dennis O'Brien

-24-

that he was "sorry" he had put O'Brien "through the trauma" and said "Please accept my sincere apologies." See Fact No. 11, above.

Yet notwithstanding their knowledge of the true facts, Mitchell and Montoya engaged in a scheme to defraud the Court and pervert the system of justice. They filed a verified complaint against the City of Santa Fe, not the County of Santa Fe, against the municipal police department, not the county sheriff's office, and against Dennis O'Brien as a Santa Fe Police Department officer, rather than as a Santa Fe County Deputy Sheriff. The complaint was a bundle of lies: it contained false and misleading statements of material fact and omissions of material fact regarding the shooting of Mitchell by O'Brien on November 4, 2002. The pleading (and the amended complaint filed later, but never served on anyone) alleged that O'Brien shot Mitchell "in the back" and "from behind" as Mitchell was "walking away" from the officer and that at the time he was shot, Mitchell posed no "legitimate threat" to any person including O'Brien. See Case No. 05-CV-1155 Doc. Nos. 1 and 13. Mitchell's criminal prosecution, trial and felony convictions were nowhere mentioned in the pleadings. Obviously, Judge Browning (and the jury) in Case No. 05-CV-1155 never knew about the latter facts which could have been the basis for collateral estoppel.

We likely never will know the full details of the "service" of the original complaint: the summons violated Rule 4(a)(1)(A) as to form, and on its face does not clearly name Dennis O'Brian (sic.) as a defendant. In the post-judgment proceedings, O'Brien has stated under oath that he never was served with a summons and/or

the complaint, and that he never would have simply ignored such a blatantly false pleading, if, in fact, he had been served with it. See Case No. 05-CV-1155, Doc. No. 10 at ¶¶ 5-6.[13] Moreover, the Return of Service filed by Montoya on Mitchell's behalf is ambiguous at best--showing only that something had been served on Sgt. O'Brien--and the Sheriff's Department's internal paperwork suggests that the service was of a complaint in a different case, involving a different, pro se plaintiff. See Case No. 05-CV-1155, Doc. Nos. 7-9. Finally, the officially-issued summons filed with the return had been altered with the use of white-out; not a mistake, but an intentional act. See Material Fact Nos. 27-28.[14]

Once they had engineered a default by Dennis O'Brien, Mitchell and Montoya went to town. Many months after entry of a default, Montoya filed an amended complaint, correcting O'Brien's surname and title (now correctly identifying him as a Deputy Sheriff of the Santa Fe County Sheriff's Department rather than as "an Officer of the Santa Fe Police Department"), and now adding as a party the Board of County Commissioners of Santa Fe County and its

---

[13] Although discovery has shown that Dennis O'Brien learned from a newspaper article that the City of Santa Fe (but not he) had been sued based on the shooting of Mitchell, due process requires formal service of process, not informal notice about a lawsuit. See, i.e. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

[14] As the Court is aware, judgments by default are disfavored, especially in cases involving material issues of fact and/or substantial sums of money. See, i.e. Wright, Miller and Kane, Federal Practice and Procedure, Civil 3d § 2681, § 2693; accord, i.e. Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970) ("[t]he preferred disposition of any case is upon its merits and not by default judgment"); accord, Meeker v. Rizley, 324 F.2d 269 (10th Cir. 1963).

"subsidiary" Sheriff's Department, in place of the City of Santa Fe
and its subsidiary, the Santa Fe Police Department. Not
surprisingly, Montoya did not serve the amended complaint on either
defendant. See Case No. 05-CV-1155, Doc. No. 31. Subsequently,
when Judge Browning decided that a jury trial needed to be held on
the issue of damages, Montoya argued, and helped to convince the
Court, that there need not be notice given to Defendants O'Brien
and/or the Board of County Commissioners of the upcoming trial.
Such notice undoubtedly would have exposed the fraud, very quickly.
See Memorandum Opinion and Order, Doc. No. 18.[15]

Finally, without any adverse party to show otherwise, Mitchell
and Montoya knowingly presented full-bore perjury to the Court in
order to convince the jury to award huge damages. (And as the
Tenth Circuit Court of Appeals knows, Dennis W. Montoya is no
stranger to use of perjured testimony to obtain verdicts; see,
i.e., Holguin v. Burge, supra (dismissal with prejudice of claims
as sanction for, *inter alia*, "perjury"); Archibeque v. Atchison,
Topeka and Santa Fe Ry. Co., supra (dismissal with prejudice of
complaint based on the plaintiff's "willful conduct" including
"repeatedly perjur[ing] herself"); Chavez v. City of Albuquerque,
supra (dismissal with prejudice of complaint based on plaintiff's
"perjurious testimony"). Here, some of the perjury was as follows:

Q [by Montoya]: What were you doing at that moment
[when the first bullet struck]?

---

[15] With respect, Plaintiffs contend that the Court's ruling,
made without the benefit of adversary briefing, was erroneous.

-27-

A [by Mitchell]: I was standing, holding the fake sword that I used to drive off my neighbor's Rottweiler, who had attacked me that morning--I did not injure the dog, mind you--and looking out into the sky, spacing out wondering what the weather was going to be like that day.

Q:   Did you see the officer approach you?

A:   No, I did not.  His own testimony was that he approached by stealth.

                             ***

A:   The first I knew that somebody was standing behind me was when I heard a command to "Put down your weapon," bang, bang, bang.

Q:   What was the bang, bang, bang?

A:   He began firing before he finished the sentence.

Q:   Was there anyone else near you?

A:   Not that I saw.

Q:   Were you facing the officer?

A:   No.  ***

A:   [O'Brien] shot me without giving me proper warning, shot me in the back, which is generally considered dirty pool, shot me when I was not a threat to anyone else, altered evidence and concocted an absurd story afterwards to posit the scenario that I had attacked him.

Not surprisingly, after listening to the foregoing perjury, and without any party to cross-examine Mitchell and present the true, previously-adjudicated facts, the jury awarded $3 million damages against the cop who--according to the evidence presented by Walter Mitchell and Dennis W. Montoya--stealthily had snuck up behind Mitchell and shot him in the back three times, without provocation or warning, and for no discernible reason whatsoever.

The Final Judgment (Doc. No. 45) rests upon a rotten structure of perjury and intentional abuse of the system, and cannot stand.

## CONCLUSION

Regardless of the issues of service of process, due process, in personam jurisdiction and basic, fundamental fairness, the undisputed evidence demonstrates that the Final Judgment was based on false and misleading statements and omissions of material fact, perjurious testimony, abuse of the legal system, and a knowing, intentional scheme by Walter Mitchell and Dennis W. Montoya to defraud the Court.  Their fraud was successful, at least until now.

The Court should grant the motion, enter summary judgment in favor of the Plaintiffs, and vacate the Final Judgment (Doc. 45) and the Notice of Lis Pendens (Doc. 47).

Respectfully submitted,

/s/ Michael Dickman
_____

**MICHAEL DICKMAN**
Post Office Box 549
Santa Fe, New Mexico 87504
(505) 989-9360
**Attorney for Plaintiffs
Dennis O'Brien and
Board of County Commissioners
of Santa Fe County**

## CERTIFICATE OF SERVICE

I certify that I caused a copy of this motion
to be electronically served on

Santiago E. Juarez, Esq.

on the date of filing hereof
at his email addresses as registered on CM/ECF

/s/ Michael Dickman
_____

**MICHAEL DICKMAN**

-29-