IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS O'BRIEN and
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,

    Plaintiffs,

vs.                                          No. 11-CV-409 JB/WDS

DAVID E. MITCHELL,
Personal Representative
of the Estate of Walter Mitchell, Deceased,

    Defendant.

## AFFIDAVIT OF MARK H. DONATELLI

COUNTY OF SANTA FE  )
                          ) ss.
STATE OF NEW MEXICO )

    I, Mark H. Donatelli, having been duly sworn upon my oath, hereby do state as follows:

    1.    My name is Mark H. Donatelli.

    2.    This affidavit is based upon my personal knowledge.

    3.    I am a principal in the law firm of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienenu, LLP. I have practiced law in New Mexico since 1976.

    4.    In 2003-04, I and John Day, another lawyer in my firm, represented Walter Mitchell in <u>State of New Mexico v. Mitchell</u>, First Judicial District Court, State of New Mexico, Santa Fe County Case No. D-101-CR-2002-1027. Mr. Mitchell was charged with aggravated assault against a peace officer, a third degree felony, and aggravated assault with a deadly weapon, to wit: a sword, a fourth degree felony.

-Page 1 of 3-



5.  Mr. Day and I represented Mr. Mitchell in a bench trial held on March 16-17, 2004. The Court (Judge Stephen Pfeffer) convicted Mr. Mitchell of both counts, and found that he was, beyond a reasonable doubt, guilty but mentally ill of the charges. I have attached a true copy of the Court's Findings of Fact and Conclusions of Law, as Exhibit A.

6.  My office provided Mr. Mitchell with a copy of Ex. A.

7.  On July 20, 2004, Mr. Mitchell filed a Waiver of Appeal which was witnessed by Mr. Day. I have attached a copy as Ex. E.

8.  Sometime after the criminal case concluded, my office was contacted by attorney Dennis W. Montoya. Mr. Montoya made arrangements to come to our Santa Fe office and examine our firm's case file from the criminal case, which included copies of the pleadings and other documents filed in the case, including Ex. A. When he came to our office, I spoke to Mr. Montoya about the criminal case. Mr. Montoya indicated that he was planning to sue Officer Dennis O'Brien on Mr. Mitchell's behalf for damages based on the shooting incident that was the basis of Mr. Mitchell's criminal convictions. I observed Mr. Montoya in one of our firm's conference rooms, and I saw him using a portable scanning device to scan in documents from our firm's criminal case file.

_____
MARK H. DONATELLI

SUBSCRIBED AND SWORN TO before me by Mark H. Donatelli on this _29th_ day of _December_, 2011.

_____
NOTARY PUBLIC

My Commission Expires: 03/09/2014

-Page 3 of 3-

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

No.  D-0101-CR-200201027

04 APR 22 AM 8:39

STATE OF NEW MEXICO,

   Plaintiff,

vs.

WALTER MITCHELL,

   Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** came before the Court for a non-jury trial on March 16 and 17, 2004, the State being represented by Joseph E. Campbell of the First Judicial District Attorney's Office, Defendant being represented by his attorneys Mark Donatelli and John Day, and the Court having heard the evidence and having reviewed the State's Proposed Findings of Facts and Conclusions of Law and the Defendant's Findings of Fact and Conclusions of Law Following Submissions of Evidence finds the following beyond a reasonable doubt:

### Findings of Fact

1. Between the hours of 8:00 a.m. on November 3, 2002 and 2:00 a.m. on November 4, 2002, Walter Mitchell consumed eight (8) ounces of *Wal-Tussin*, a cough syrup, which contained dextromethorphan.

2. This dose of *Wal-Tussin* exceeded the recommended maximum dosage by a factor of four (4).

3. That Walter Mitchell had been taking this dosage for at least a month prior to the



EXHIBIT A

1

incidents of November 4, 2002.

4. That Walter Mitchell admits to a long standing use of marijuana for personal and medicinal purposes.

5. Ninety-five percent of the population can have psychotic events on dextromethorphan.

6. Defendant has a genetic makeup found in twenty-five (25) to thirty-one (31) percent of the population which metabolizes dextromethorphan at a slower rate.

7. In all likelihood Defendant would have been mentally ill on November 4, 2002, even if he did not have his particular genetic makeup.

8. That Walter Mitchell has a longstanding brain syndrome from a tumor which was removed, but which had no effect on, and did not contribute to, his actions of November 4, 2002.

9. The Defendant was not forced to become intoxicated against his will.

10. Defendant reported believing he may have been hypomanic after drinking *Wal-Tussin* in the past.

11. Dextromethorphan is used by some people as a recreational drug.

12. Defendant self-determined to overuse and abuse both dextromethorphan and marijuana in the past.

13. That on November 4, 2002, Walter Mitchell had a substantial disorder of thought, mood and behavior.

14. That on November 4, 2002, Walter Mitchell did intentionally arm himself with a sword and attempt to strike, with the aforementioned sword, the animals belonging to the Perez family.

15. That in the course of striking at the animals Walter Mitchell did almost strike Mayre Perez with the sword.

16. That as a result of Walter Mitchell's actions, Mayre Perez believed that she might be struck with the sword.

17. That as a result of Walter Mitchell's actions Mayre Perez called her parents who subsequently called the police.

18. That upon arriving at the scene, deputies of the Santa Fe County Sheriff's Department observed Walter Mitchell with a sword, which at the time was in a scabbard.

19. That upon arriving at the scene Sergeant Dennis O'Brien, of the Santa Fe County Sheriff's Department, became the lead officer.

20. That several of the deputies, including Sergeant O'Brien, instructed Walter Mitchell to put the sword down.

21. That after being instructed to put the sword down Walter Mitchell then removed the sword from its scabbard and held the sword in a threatening manner.

22. That the deputies continually instructed Walter Mitchell to put the sword down and that Walter Mitchell refused to comply with the deputies' orders.

23. That on two (2) occasions Walter Mitchell advanced on Sergeant O'Brien, while holding the sword in a threatening position, and then retreated back to his original position.

24. That on both of these occasions Walter Mitchell advanced on Sergeant O'Brien in a slow manner.

25. That on both of these occasions Sergeant O'Brien felt threatened and believed that Walter Mitchell was going to attack him with the sword.

26. That Walter Micehell then advanced on Sergeant O'Brien a third (3rd) time.

27. That the third time that Walter Mitchell advanced on Sergeant O'Brien, it was at a quicker pace than the previous two (2) times and Sergeant O'Brien believed he was going to be attacked.

28. That while Walter Mitchell was advancing on Sergeant O'Brien, Sergeant O'Brien was retreating.

29. That Sergeant O'Brien had retreated as far as possible before backing into a parked behicle.

30. That after Sergeant O'Brien had retreated as far as possible Walter Mitchell continued to advance on Sergeant O'Brien.

31. That when Walter Mitchell had advanced to within approximately ten (10) feet of Sergeant O'Brien, Sergeant O'Brien discharged his firearm three (3) times.

32. That Walter Mitchell was shot a total of three (3) times by Sergeant O'Brien.

**Conclusions of Law**

1. For neither the general population, 95% of which can have a psychotic event on dextromethorphan, nor the 25% percent to 31% percent of the population which metabolizes dextromethorphan at a slower rate, is a reaction to dextromethorphan or a possible reaction to dextromethorphan a mental disease.

2. Mr. Mitchell was not forced to become intoxicated against his will.

3. The Defendant knew the intoxicating effect of dextromethorphan.

4. Defendant willingly assumed the risk of possible intoxication on dextromethorphan.

5. The Defendant knew that dextromethorphan had an intoxicating effect on him when he consumed it prior to November 4, 2002.

6. Defendant willingly assumed the risk of possible intoxication with the use of

dextromethorphan in the days leading up to November 4, 2002.

7. Whether due to intoxication or a psychotic event due to intoxication, and whether by dextromethorphan alone or in combination with any other drug or drugs, at the time of the assault, Defendant had a substantial disorder of thought, mood and behavior which impaired Defendant's judgment, but which does not amount to insanity.

8. Defendant is beyond a reasonable doubt guilty but mentally ill of:

   (a)  Aggravated assault against a peace officer as charged in Count I.

   (b)  Aggravated assault with a deadly weapon, to-wit: a sword as charged in Count II.

**ENTERED** this 22nd day of April, 2004.

_____
STEPHEN PFEFFER, District Judge

Notice on date of filing to:

Joseph Campbell, Esq., District Attorney's Office, P.O. Box 2041, Santa Fe, NM 87504-2041
Mark Donatelli, Esq. and John Day, Esq., P.O. Box 8180, Santa Fe, NM 87504-8180

I hereby certify that the foregoing pleading is a true and correct copy of same which has been filed in my office on the 22 day of Apr 20 04.
Dated this 4 date of May 20 10

By _____
        Deputy

**STEPHEN T. PACHECO**
Court Administrator/District Court Clerk

5

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

FIRST JUDICIAL
DISTRICT COURT

04 JUL 20 AM 11:09

STATE OF NEW MEXICO,

    Plaintiff,

vs.                                    Docket No. D-101-CR-200201027

WALTER MITCHELL,

    Defendant.

### DEFENDANT'S WAIVER OF APPEAL

I, Walter Mitchell, being duly sworn on my oath, state that I have been advised by my trial attorney that I have the right to appeal and that if I do not have the money to pay for an appeal, I am entitled to proceed with an appeal at state expense, including the services of an attorney to represent me on the appeal. Understanding my rights, I do not desire to appeal the final order of the court and hereby voluntarily, knowingly and intelligently waive my right to appeal.

Date: 12/7/04                      W.M. Mitchell
                                                   WALTER MITCHELL

Subscribed and sworn to before me this 19th day of July, 2004.

Witnessed:

_____ for        _____
Mark H. Donatelli                               Notary Public, Judge
Attorney for Walter Mitchell        or Other Officer Authorized
                                                   to Administer Oaths

                                                   My commission expires: 02-09-08

                                                   (Seal)

S:\MARK\5797\Pleadings\waiver of appeal.wpd



OFFICIAL SEAL
Richard A. Martinez
NOTARY PUBLIC-STATE OF NEW MEXICO
Notary Bond Filed with Secretary of State
My Commission Expires 02-09-08

EXHIBIT E