**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DENNIS O'BRIEN and
BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE,

       Plaintiffs,

vs.                                   No. CIV 11-0409 JB/WDS

DAVID E. MITCHELL,
Personal Representative
of the Estate of Walter Mitchell,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Summary Judgment,
filed April 13, 2012 (Doc. 27)("MSJ"). The Court held a hearing on May 18, 2012. The primary
issues are: (i) whether Walter Mitchell committed perjury in the damages trial in Mitchell v. City
of Santa Fe, No. CIV 05-1155 (D.N.M.), held on December 10, 2007; and (ii) whether, because W.
Mitchell thereby committed a "fraud on the court," the Court should vacate the judgment in that
case. The Court concludes that Plaintiffs Dennis O'Brien and Board of County Commissioners of
the County of Santa Fe have not established that W. Mitchell had an intent to deceive or that he
committed perjury. The Court further concludes that the Plaintiffs have not established that W.
Mitchell and his attorney, Dennis W. Montoya, engaged in a deliberate plan or scheme to defraud
the Court, and that the Plaintiffs have failed to establish that the Court should vacate the judgment
in Mitchell v. City of Santa Fe, No. CIV 05-1155. Because a genuine issue of material fact exists
whether W. Mitchell had an intent to deceive or committed perjury, the Court will deny the MSJ.

## FACTUAL BACKGROUND

The record in Mitchell v. City of Santa Fe, affidavits, and exhibits demonstrate that the

following facts are undisputed.

### 1.   The November 4, 2002, Indictment in the Criminal Case Underlying the Civil Action in Mitchell v. City of Santa Fe.

On November 4, 2002, W. Mitchell, after voluntarily consuming an excessive dose of

medication that apparently caused him to become psychotic and/or hypomanic, attacked his

neighbor's dogs with a sword in Santa Fe, New Mexico and almost struck a young neighbor --

Mayre Perez -- with his sword. See State v. Mitchell, No. D-101-CR-2002-01027, Findings of Fact

and Conclusions of Law ¶¶ 1-15, at 1-3 (dated April 22, 2004), filed April 13, 2012, (Doc. 27-

1)("State Findings of Fact"); MSJ ¶ 1, at 6 (setting forth this fact).[1] M. Perez, believing that W.

Mitchell might strike her, called her parents, who in turn called 911. See State Findings of Fact and

Conclusions of Law ¶¶ 16-17, at 3; MSJ ¶ 1, at 6 (setting forth this fact); Response in Opposition

_____

[1]D. Mitchell admits this fact, but objects that the facts underlying the state criminal case are immaterial. See Response in Opposition to O'Brien and Santa Fe County's Motion for Summary Judgment on Their "Independent Action in Equity to Obtain Relief from a Judgment" at 11-12, filed May 3, 2012 (Doc. 32)("Response"). The local rules establish that "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically converted." D.N.M.LR-Civ. 56.1(b). D. Mitchell's argument that the facts underlying the state criminal case are immaterial does not specifically controvert those facts, and the Court will therefore deem those facts admitted. Immateriality is D. Mitchell's most consistent argument regarding the Plaintiffs' undisputed material facts. See Response at 11-12 (asserting that facts 1-6 and 7-9 are immaterial). The Court notes this argument, but will not address it for each fact which D. Mitchell does not dispute but considers immaterial, in the factual section; the Court will, of course, address materiality and relevance in the analysis. See Wilson v. Jara, No. 10-0797, 2011 WL 5822729, at *2 (D.N.M. Oct. 17, 2011)(Browning, J.)("Whether this fact is relevant is a legal argument, and the Court will not address United States v. Abdendi at this time, but will consider it in its legal analysis."); Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;][l]egal argument should be reserved for separate portions of the brief.'").

to O'Brien and Santa Fe County's Motion for Summary Judgment on Their "Independent Action in Equity to Obtain Relief from a Judgment" at 11-12, filed May 3, 2012 (Doc. 32)("Response")(not disputing this fact).  Sergeant Dennis O'Brien,[2] Deputy Sheriff Rafael Rodriguez, Deputy Sheriff Fred Borman, and Deputy Sheriff Billy Smith, employees of the Santa Fe County Sheriff's Department, were dispatched to the scene.  See State v. Mitchell, No. D-101-CR-2002-01027, Statement of Probable Cause at 3-4 (dated November 4, 2002), filed April 13, 2012 (Doc. 27-2)("Statement of Probable Cause"); MSJ ¶ 2, at 6 (setting forth this fact); Response at 11-12 (not disputing this fact).  When the four Sheriff's deputies arrived, M. Perez' father, Filberto Perez, was holding W. Mitchell at bay with a piece of pipe.  See Statement of Probable Cause at 6.  O'Brien was the lead deputy.  See State Findings of Fact ¶ 19, at 3; MSJ ¶ 3, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).

Upon their arrival, the deputies instructed W. Mitchell to put down the sword; rather than obey their command, W. Mitchell removed the sword from the scabbard and held it in a threatening manner.  See State Findings of Fact ¶¶ 20-21, at 3; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  The deputies continued to instruct W. Mitchell to put down the sword, but he refused to comply and twice advanced on O'Brien while holding the sword in a threatening position.  See State Findings of Fact ¶¶ 22-23, at 3; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  On both of those occasions, O'Brien felt threatened and believed that W. Mitchell intended to attack him with the sword.  See State Findings of Fact ¶ 25,

---

[2]The state court documents from State v. Mitchell, No. D-101-CR-2002-01027, and the Court's previous case involving these parties, Mitchell v. City of Santa Fe, No. CIV 05-1155, both refer to Dennis O'Brian.  The Complaint to Set Aside Judgment, filed May 11, 2011 (Doc. 1)("Complaint"), and other documents in this case refer to Dennis O'Brien.  The Court will refer to him as O'Brien in this Memorandum Opinion and Order.

at 3; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  When W. Mitchell advanced more quickly on O'Brien a third time, O'Brien backed up until he had retreated into a parked vehicle.  See State Findings of Fact ¶¶ 26-29, at 3-4; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  During the incident, W. Mitchell made statements about the apocalypse and said "I hate cops."  Statement of Probable Cause at 4; MSJ ¶ 5, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  When W. Mitchell made his final advance on O'Brien, he held the sword with the blade facing out and with a look of rage in his eyes.  See Statement of Probable Cause at 4; MSJ ¶ 5, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  After retreating as far as possible, O'Brien shot W. Mitchell three times.  See State Findings of Fact ¶¶ 29-32, at 4; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  The deputies then arrested W. Mitchell.  See Statement of Probable Cause at 4-5; MSJ ¶ 4, at 7 (setting forth this fact); Response at 11-12 (not disputing this fact).  Seven eyewitnesses observed W. Mitchell advancing on O'Brien with the sword, O'Brien's retreat until he reached the parked car, and the discharge of O'Brien's firearm.  See Statement of Probable Cause at 3-7; MSJ ¶ 6, at 7-8 (setting forth this fact); Response at 11-12 (not disputing this fact).

**2.     W. Mitchell's Trial and Conviction in State Court Based on the November 4, 2002 Incident.**

On November 15, 2002, a grand jury of Santa Fe County, New Mexico indicted W. Mitchell on two felony charges: (i) aggravated assault upon a peace officer; and (ii) aggravated assault with a deadly weapon.  See State v. Mitchell, No. D-101-CR-2002-01027, Grand Jury Indictment (dated November 15, 2002), filed April 13, 2012 (Doc. 27-3); MSJ ¶ 7, at 8 (setting forth this fact); Response at 12 (not disputing this fact).  Following a bench trial, from March 16 to March 18, 2004, at which two defense attorneys -- Mark Donatelli and John Day -- represented W. Mitchell, he was

-4-

"convicted beyond a reasonable doubt of both of the felony charges, and was found guilty but mentally ill."  State v. Mitchell, No. D-101-CR-2002-01027, Judgment, Partially Suspended Sentence at 1-2 (dated June 15, 2004), filed April 13, 2012 (Doc. 27-4)("State Criminal Judgment"); State Findings of Fact ¶ 8, at 2; MSJ ¶ 8, at 8 (setting forth this fact); Response at 12 (not disputing this fact).  Mr. Donatelli is a principal in the law firm of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienenu, LLP.  See Affidavit of Mark H. Donatelli ¶¶ 3-4, at 1 (executed December 29, 2011), filed April 13, 2012 (Doc. 27-10); MSJ ¶¶ 13-14, at 9-10 (setting forth this fact); Response at 13 (not disputing this fact).  W. Mitchell subsequently waived his right to appeal those convictions.  See State v. Mitchell, No. D-101-CR-2002-01027, Defendant's Waiver of Appeal (dated July 20, 2004), filed April 13, 2004 (Doc. 27-5); MSJ ¶ 9, at 8 (setting forth this fact); Response at 12 (not disputing this fact).  The State Findings of Fact state that O'Brien is a deputy with the Santa Fe Sheriff's Department, and not a city police officer, and that all responding officer's were deputies with the Santa Fe Sheriff's Department.  See State Findings of Fact ¶¶ 18-20, 22, at 3; MSJ ¶ 10, at 8 (setting forth this fact); Response at 12 (not disputing this fact).

On May 7, 2004, the Honorable Stephen Pfeffer, First Judicial District Court Judge, County of Santa Fe, State of New Mexico, held a sentencing hearing.  See State v. Mitchell, No. D-101-CR-2002-01027, Sentencing Hearing (Partial Transcript) (dated May 7, 2004), filed April 13, 2012 (Doc. 27-9)("State Hearing Transcript"); MSJ ¶ 11, at 8 (setting forth this fact); Response at 12-13 (not disputing this fact).[3]  At the state sentencing hearing, W. Mitchell addressed the Court, and

---

[3]D. Mitchell admits the facts asserted in paragraph 11 of the Plaintiffs' undisputed facts, but argues that "Plaintiff O'Brien is again attempting to confuse the issue at hand" and that "[a]t best this fact might have provided a factual defense if Plaintiff had not decided to ignore his duty to answer Decedent Walter Mitchell's Complaint."  Response at 12-13 (emphasis in original).  The local rules establish that "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically converted."  D.N.M.LR-Civ. 56.1(b).  Because D. Mitchell does not

made the following statements regarding the events surrounding his conviction:

>Mitchell:  I suppose I should first address the issue of whether or not I feel remorse. There is no doubt in my mind that I started the ball rolling that morning. I believe a person is responsible for their own actions, that it's possible to stay out of trouble. I very obviously failed to do so. The extent of my regret is very difficult to express. I, this has been a shattering experience and if you have heard my prayers in the last several months you'd know my remorse. I feel bad about the whole thing. I've never been so ashamed in my life. I don't know what to say, your Honor.

>                        * * * *

>Court:  How do you feel about the trauma to which you subjected Officer O'Brien?

>Mitchell:  That was a horrible thing to do. The sheer madness of the act, if anybody had attacked me with a sword, it's totally over the top, what I did, what I apparently did. The -- I don't want to hurt anybody, your Honor, and the notion of attacking four armed police officers with a sword is perfectly insane. I think about the definition and the staggering quality of the offense, given that if I'd been shot dead that would have been all good and fair.

>                        * * * *

>Mitchell:  I'm sorry I put him through the trauma.

>                        * * * *

>Mitchell:  Please accept my sincere apologies. I didn't mean to traumatize you. I didn't, I surely had no conscious intent of killing you or hurt anyone.

State Hearing Transcript at 2-4; MSJ ¶ 11, at 9 (setting forth this fact); Response at 12-13 (not

---

dispute the asserted facts, the Court will deem those facts admitted. Whether a fact is relevant is legal argument, which the Court will consider in its analysis section. See Wilson v. Jara, 2011 WL 5822729, at *2("Whether this fact is relevant is a legal argument, and the Court will not address United States v. Abdendi at this time, but will consider it in its legal analysis."); Ruiz v. City of Brush, 2006 WL 1816454, at *4 ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;][l]egal argument should be reserved for separate portions of the brief.'").

disputing this fact).  At the conclusion of the state sentencing hearing, Judge Pfeffer sentenced W. Mitchell to four and a half years of incarceration, which was suspended in favor of supervised provision for the same period.  See State Criminal Judgment at 1-2; MSJ ¶ 12, at 9 (setting forth this fact); Response at 13 (not disputing this fact).

   **3.     W. Mitchell's Post-Conviction Civil Action in Federal Court, Mitchell v. City of Santa Fe, based on the November 4, 2002 incident.**

   After the state case ended, Mr. Donatelli provided W. Mitchell with a copy of the State Findings of Fact.  See Donatelli Aff. ¶ 5, at 2; MSJ ¶ 14, at 10 (setting forth this fact); Response at 13 (not disputing this fact).  Sometime later, Mr. Montoya contacted Mr. Donatelli's office and made arrangements to examine the criminal case file, which included copies of the State Findings of Fact, pleadings, and other filed documents.  See Donatelli Aff. ¶ 8, at 2; MSJ ¶ 15, at 10 (setting forth this fact).[4]  Mr. Montoya's paralegal, Brandon Cummings, went to Mr. Donatelli's office, scanned some materials in the state criminal file, and took notes on others.  See Donatelli Aff. ¶ 8, at 2; Affidavit of Brandon Cummings (executed May 2, 2012), filed May 3, 2012 (Doc. 32-1).[5]

---

   [4]D. Mitchell disputes this fact and asserts that "Paralegal Brandon Cummings scanned some materials from attorney Mark Donatelli's file" and that "Dennis W. Montoya did not accompany him."  Response at 13 (citing Affidavit of Brandon Cummings (executed May 2, 2012), filed May 3, 2012 (Doc. 32-1)).  Local rule 56.1(b) requires that any facts set forth in a motion for summary judgment must be "specifically controverted" or they will be deemed waived.  D.N.M.LR-Civ. 56.1(b).  The facts that D. Mitchell provides in his Response and the citations to Cummings' affidavit do not specifically controvert the asserted fact that Mr. Montoya contacted Mr. Donatelli's office and made arrangements to examine the state criminal file.  Rather, D. Mitchell asserts that Cummings was the person who actually examined that file and says nothing about who contacted Mr. Donatelli.  Because the Response does not specifically controvert the asserted fact that Mr. Montoya contacted Mr. Donatelli, the Court will deems this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

   [5]The Plaintiffs assert that:

   While at the office, Mr. Donatelli spoke to Mr. Montoya about the criminal case. Mr. Montoya indicated that he was planning to sue Officer Dennis O'Brien on

Before filing a civil action, W. Mitchell and Mr. Montoya were aware of W. Mitchell's state prosecution, his convictions, and the State Findings of Fact.  See Donatelli Aff. ¶¶ 5-8, at 2; MSJ ¶ 17, at 10-11 (setting forth this fact); Response at 13 (not disputing this fact).

On November 2, 2005, W. Mitchell, represented by Mr. Montoya, filed <u>Mitchell v. City of Santa Fe</u>, in the United States District Court for the District of New Mexico, docketed as No. CIV 05-1155, alleging that the deputies used excessive force when arresting him on November 4, 2002 in violation of 42 U.S.C. § 1983 and asserting supervisory liability against the City of Santa Fe. <u>See</u> <u>Mitchell v. City of Santa Fe</u>, No. CIV 05-1155, Complaint for Civil Rights Violations, filed November 2, 2005 (Doc. 1)("Mitchell Complaint"); MSJ ¶ 18, at 11 (setting forth this fact); Response at 13 (not disputing this fact).  W. Mitchell named the City of Santa Fe, its "subsidiary" the Santa Fe Police Department, and O'Brien, individually as an office of the Santa Fe Police Department, as defendants.  Mitchell Complaint at 1; MSJ ¶ 18, at 11 (setting forth this fact); Response at 13 (not disputing this fact).  The Mitchell Complaint alleged that O'Brien shot W. Mitchell in the back as W. Mitchell was walking away and that, at the time he was shot, W. Mitchell

---

Mitchell's behalf for damages based on the incident that was the basis of Mitchell's criminal convictions.  Mr. Donatelli observed Mr. Montoya in one of the firm's conference rooms, and saw him using a portable scanning device to scan in documents from the firm's criminal case file, which file included a copy of Exhibit A.

MSJ ¶ 16, at 10 (setting forth this fact).  D. Mitchell disputes this fact and asserts that "Paralegal Brandon Cummings scanned some materials from attorney Mark Donatelli's file.  Dennis W. Montoya did not accompany him.  Furthermore, Mr. Cummings scanner broke and he was reduced to taking notes."  Response at 13 (citing Cummings Aff. ¶¶ 11-13, at 2).  Cummings' affidavit is sufficient to controvert the asserted fact that Mr. Montoya examined the state criminal file at Mr. Donatelli's office.  Because the Court must construe the facts in the light most favorable to the non-moving party on summary judgment, see Hunt v. Cromartie, 526 U.S. at 550-55, the Court will modify the asserted fact to reflect that it was Cummings who examined the files at Mr. Donatelli's office.

posed no threat to O'Brien or to others.  <u>See</u> Mitchell Complaint ¶ 11, at 3; MSJ ¶ 19, at 11 (setting

forth this fact); Response at 13 (not disputing this fact).  It further alleged that O'Brien was, at all

relevant times, "a law enforcement officer employed by the Santa Fe Police Department" who was

acting within the scope and course of his employment and under the color of state law.  Mitchell

Complaint ¶¶ 4-7, at 2; MSJ ¶ 19, at 11 (setting forth this fact); Response at 13 (not disputing this

fact).  The Mitchell Complaint omits any mention of W. Mitchell's altercation with M. Perez, his

altercation with the deputies, the sword, the standoff, the trial, or the convictions.  <u>See</u> Mitchell

Complaint at 2-4; MSJ ¶ 19, at 11-12 (setting forth this fact); Response at 13 (not disputing this

fact).  W. Mitchell verified the Mitchell Complaint under oath.  <u>See</u> Mitchell Complaint at 9; MSJ

¶ 20, at 12 (setting forth this fact); Response at 13 (not disputing this fact).

The City of Santa Fe and the Santa Fe Police Department had no involvement in the events

of November 4, 2002, and all responding officers were Sheriff's deputies and a Sheriff's Sergeant.

<u>See</u> State Findings of Fact ¶¶ 18-20, at 3; MSJ ¶ 21, at 12 (setting forth this fact); Response at 13

(not disputing this fact).  O'Brien has never worked for the City of Santa Fe.  <u>See</u> <u>Mitchell v. City</u>

<u>of Santa Fe</u>, No. CIV 05-1155, Affidavit of Dennis O'Brien ¶¶ 3-4, at 1-2 (executed March 18,

2010), filed March 23, 2010 (Doc. 49-10); MSJ ¶ 22, at 12 (setting forth this fact); Response at 13

(not disputing this fact).  Before filing the Mitchell Complaint, W. Mitchell was aware that the Santa

Fe Police Department had no involvement in the incident and that O'Brien was a sergeant with the

Santa Fe County Sheriff's Department, and a paralegal from Mr. Montoya's office had reviewed

information reflecting the same.  <u>See</u> State Findings of Fact ¶¶ 18-20, at 3; Donatelli Aff. ¶¶ 5-8, at

2; Cummings Aff. ¶¶ 11-13, at 2.[6]  Mr. Montoya, on behalf of W. Mitchell, prepared a typed

---

[6]The Plaintiffs assert:

summons for "Officer Dennis O'Brian [sic], Santa Fe Police Dept.'" Mitchell v. City of Santa Fe,

No. CIV 05-1155, Summons in a Civil Case, filed November 2, 2005 (Doc. 1-1)("O'Brien

Summons"); Mitchell v. City of Santa Fe, No. CIV 05-1155, Return of Service, file December 29,

2005 (Doc. 3)("O'Brien Docket Entry Return of Service"); MSJ ¶ 24, at 12 (setting forth this fact).[7]

---

> Prior to filing the complaint in Case No. 05-CV-1155, Mitchell and Mr. Montoya knew that the Santa Fe Police Department had no involvement in the subject incident, and that Dennis O'Brien was a sergeant with the Santa Fe County Sheriff's Department, rather than an officer of the City of Santa Fe Police Department.

MSJ ¶ 23, at 12 (setting forth this fact).  D. Mitchell disputes this fact and argues: "There is no evidence presented in Facts Nos. 10, 14-17 above that proves what Dennis W. Montoya knew at the time of filing.  Contrary to Mark Donatelli's affidavit, Mr. Montoya did not speak to Mr. Donatelli nor did Mr. Montoya scan or view anything in Mr. Donatelli's file."  Response at 13-14 (citing Cummings Aff. at 1-2; Affidavit of Dennis W. Montoya in Response to Affidavit of Mark H. Donatelli, Esq. (executed May 2, 2012), filed May 3, 2012 (Doc. 32-2)).  In the Reply in Support of Motion for Summary Judgment, filed May 16, 2012 (Doc. 33)("Reply"), the Plaintiffs urge the Court to parse the Cummings and Montoya affidavits carefully, and assert that D. Mitchell does not dispute that "client Mitchell and lawyer Montoya had actual knowledge about Mitchell's criminal prosecution." Reply at 7.  The Plaintiffs are correct that D. Mitchell does not specifically controvert, or even deny, the assertion that W. Mitchell had actual knowledge that the Santa Fe Police Department was not involved with the November 4, 2002 incident.  Accordingly, the Court will deem this portion of the fact, that W. Mitchell knew that the Santa Fe Police Department was not involved, admitted.  See D.N.M.LR-Civ. 56.1 ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").  With respect to whether Mr. Montoya was aware that the Santa Fe Police Department was not involved in this incident, D. Mitchell is correct that none of the evidence cited by the Plaintiffs establishes his knowledge.  As the Court established earlier, taking the evidence in the light most favorable to D. Mitchell, Mr. Montoya did not visit Mr. Donatelli's office or review the state criminal file there.  See note 5, supra.  Accordingly, the evidence does not establish that Mr. Montoya reviewed the state criminal file; rather, it establishes that someone from Mr. Montoya's office reviewed this evidence.  Because the evidence supports finding that someone from Mr. Montoya's office reviewed the state criminal file and the evidence which D. Mitchell cites also supports this fact, the Court will modify the asserted fact to reflect this fact.

[7]D. Mitchell objects to the Plaintiffs' citation to the O'Brien Summons, in which the Plaintiffs refer to the summons as "unissued." Response at 14.  The citation is not, however, part of the asserted fact, and D. Mitchell does not specifically controvert the asserted fact that the O'Brien Summons was for "Officer Dennis O'Brian, Santa Fe Police Dept." Accordingly, the Court will deem the asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).  Moreover, the description is accurate to the extent that the original summons attached to the Mitchell Complaint is not the

The O'Brien Summons reflects a procedural anomaly, in that the caption did not include O'Brien's name as a defendant, but instead named the City of Santa Fe and "et al."; thus, O'Brien's name does not appear in the caption on the O'Brien Summons as a defendant.  O'Brien Summons at 1; Fed. R. Civ. P. 4(a)(1)(A); MSJ ¶ 25, at 13 & n.5 (setting forth this fact).[8]  There is a dispute whether O'Brien was served.  See Mitchell v. City of Santa Fe, No. CIV 05-1155, Summons in a Civil Case, filed March 23, 2010 (Doc. 49-6)("Issued Summons"); Mitchell v. City of Santa Fe, No. CIV 05-1155, Affidavit of Ken Johnson (executed March 19, 2010), filed March 23, 2010 (Doc. 49-7); O'Brien Summons at 1; Mitchell v. City of Santa Fe, No. CIV 05-1155, Sheriff of Santa Fe County Court Services - Docket Sheet, filed March 23, 2010 (Doc. 49-9); Mitchell v. City of Santa Fe, No. CIV 05-1155, Affidavit of Dennis O'Brien (executed March 18, 2010), filed March 23, 2010 (Doc. 49-10); Cummings Aff. ¶¶ 5, 9, at 2; MSJ ¶ 26, at 13 (setting forth this fact).[9]  On December 29,

_____

summons that was issued, but a copy.

[8]D. Mitchell disputes the characterization that there is an anomaly, because captions are commonly shorted in this manner.  See Response at 14.  D. Mitchell does not specifically controvert the asserted fact, that the O'Brien Summons does not indicate that O'Brien is a named defendant, and the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1.  With respect to the characterization of this caption as an anomaly, rule 4 of the Federal Rules of Civil Procedure requires that a plaintiff "name the court and the parties."  Fed. R. Civ. P. 4(a)(1)(A).  The O'Brien Summons does not name O'Brien as a defendant, despite W. Mitchell's intent to name him as one.  Accordingly, the Court believes that "anomaly" is an apt descriptor of the O'Brien Summons to the extent that it is inconsistent with rule 4.

[9]D. Mitchell asserts that there is no dispute that O'Brien was served with the Mitchell Complaint and that the only evidence the Plaintiffs have is "their collective lack of memory regarding what was served."  Response at 14.  He argues that Cummings provided the only affirmative, undisputed evidence.  See Response at 14.  Although D. Mitchell does not state with particularity on which portions of the Cummings affidavit he relies to controvert the asserted fact that there is a dispute about service, the Cummings affidavit provides:

I further affide and state that the items served on Defendant Dennis O'Brien, on behalf of Walter Mitchell were the Summons and Complaint.  No other document(s) was/were served on Defendant O'Brien through the use of a process server or Deputy

2005, Mr. Montoya filed a Return of Service as to O'Brien, stating that personal service was made

on "the defendant" at the Santa Fe County Sheriff's Department, without specifically indicating that

it was made on O'Brien.  Mitchell v. City of Santa Fe, No. CIV 05-1155, Return of Service at 2

(dated November 18, 2005), filed April 13, 2012 (Doc. 27-6)("Signed Return of Service"); MSJ

¶ 27, at 13 (setting forth this fact).[10]  The docket in Mitchell v. City of Santa Fe, No. CIV 05-1155,

reflects that service was executed on O'Brien on November 18, 2005.  See O'Brien Docket Entry

Return of Service; Response at 14-15 (setting forth this fact).  The Issued Summons was altered so

that the typed words "Police Dept." were whited out and were replaced with the handwritten words

"County Sheriff's Dept."  Issued Summons at 1; O'Brien Summons at 1; MSJ ¶ 27, at 13 (setting

forth this fact); Response at 14-15 (not disputing this fact).  Major Kenneth Johnson, then a sergeant,

---

Sheriff at any time during the pendency of the case.

Cummings Aff. ¶ 5, at 2.  O'Brien, in his affidavit, asserts that "I never was served with a copy of a Summons and Complaint in the above-referenced action."  O'Brien Aff. ¶ 5, at 2.  Where one party asserts that something happened and the other asserts that it did not happen, it is accurate to say that there is a dispute.  The Cummings affidavit establishes only that, to his knowledge, a summons and complaint were served on O'Brien, it does not specifically controvert the asserted fact that O'Brien disputes that he was served.  Because D. Mitchell has not specifically controverted the asserted fact that there is a service dispute, the Court will deem the asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[10]D. Mitchell disputes that it is unclear whether O'Brien was served and points to the O'Brien Docket Entry Return of Service which indicates that O'Brien was served and that the City of Santa Fe was also separately served.  See Response at 14-15 (citing O'Brien Docket Entry Return of Service; Return of Service, filed November 16, 2005 ("City of Santa Fe Docket Entry Return of Service")).  D. Mitchell's citations to the docket entry returns of service do not specifically controvert the asserted fact that the Signed Return of Service states only "Served personally on the defendant" and does not indicate which defendant.  Signed Return of Service at 2.  Rather the docket returns of service indicate that service was made on the City of Santa Fe on November 15, 2005 and on O'Brien on November 18, 2005.  See City of Santa Fe Docket Entry Return of Service; O'Brien Docket Entry Return of Service.  Accordingly, the Court will deem the asserted fact, that the Signed Return of Service does not indicate which defendant was served, admitted, see D.N.M.LR-Civ. 56.1, but will consider the fact that the docket, in Mitchell v. City of Santa Fe, No. CIV 05-1155, reflects that O'Brien was served on November 15, 2005 an additional fact.

signed the Issued Summons, the handwritten "County Sheriff's Dept." is not in his handwriting, and he does not know who wrote these words or when.  Johnson Aff. ¶ 5, at 2; MSJ ¶ 28, at 13-14 (setting forth this fact).[11]  Cummings changed the words before the complaint and summons were served.  See Cummings Aff. ¶ 9, at 2; Response at 15 (setting forth this fact).  Johnson acknowledges his signature on the Signed Return of Service, but states that he has no independent recollection of what documents he served.  See Johnson Aff. ¶¶ 7-8, at 2; Response (setting forth this fact).[12]  O'Brien did not appear in Mitchell v. City of Santa Fe, No. CIV 05-1155, and he avers that he was never served with a summons or a copy of the complaint in that case.  See O'Brien Aff. ¶ 5, at 2; MSJ ¶ 29, at 14 (setting forth this fact).[13]

---

[11]D. Mitchell asserts that the words "Police Dept." were changed to "County Sheriff's Dept." before the Summons and Complaint were served.  Response at 15 (citing Cummings Aff. ¶ 9, at 2).  That Cummings states that he corrected the Issued Summons before it was served does not specifically controvert the asserted fact that Johnson does not know when the change was made.  Accordingly, the Court will deem the asserted fact admitted, but will consider Cummings' statement as an additional fact.  See D.N.M.LR-Civ. 56.1.

[12]The Plaintiffs' Reply in Support of Motion for Summary Judgment, filed May 16, 2012 (Doc. 33)("Reply"), does not contain "a statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection."  D.N.M.LR-Civ. 56.1(b).  Because each fact set forth in the Response must be specifically controverted and because the Plaintiffs make no attempt to do so, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1.

[13]D. Mitchell asserts that

Dennis O'Brien's self-serving 11th hour proclamation that he did not receive a Summons is not worthy of belief.  Brandon Cummings has attested to the fact that the Summons and Complaint were the documents that were delivered to the County of Santa Fe for service upon one of their own deputies and one of their own deputies executed the Return of Service.

Response at 15.  D. Mitchell does not, however, cite any authority to dispute the asserted fact, that O'Brien denies receiving the summons and complaint.  The local rules provide:

Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number

-13-

County Sheriff Greg Solano knew of the existence of this suit within five days of its filing, after commenting for and reading a newspaper article, but understood that the suit was against the City of Santa Fe, and spoke with O'Brien who was concerned about the lawsuit.  See Mark Oswald, "Inventor Sues City for Shooting by Sheriff's Deputy," Albuquerque Journal at 1-2 (dated November 7, 2005), filed May 3, 2012 (Doc. 32-5); Deposition of Greg Solano at 13:16-21, 15:2-25 (February 10, 2012), filed May 3, 2012 (Doc. 32-4); Deposition of Greg Solano at 35:13-18 (February 10, 2012), filed May 16, 2012 (Doc. 33-3); Response at 17 (setting forth this fact).[14] Solano spoke to O'Brien after he read the article, they discussed the article, and Solano noted that O'Brien was upset and worried about the lawsuit.  See Solano Depo. at 15:20-25; Deposition of Dennis O'Brien at 7:3-9:11 (February 10, 2012), filed May 3, 2012 (Doc. 32-6); Response at 18 (setting forth this fact).[15]

On April 11, 2006, W. Mitchell filed a motion for default judgment against O'Brien, and,

---

of the of the movant's fact that is disputed.  All materials facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  D. Mitchell does not refer with particularity to any portion of the record. Moreover, in his Response, D. Mitchell does not dispute that O'Brien denies receiving service, which is all that the fact asserts, but instead argues that O'Brien received service. Because D. Mitchell does not specifically controvert the asserted fact, that O'Brien asserts he did not receive the summons and complaint, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[14]The Plaintiffs admit that Solano and O'Brien read the article, but that they understood that only the City of Santa Fe had been sued.  See Reply at 9 (citing Solano Depo. at 35:13-18).  This understanding does not specifically controvert the asserted fact that Solano and O'Brien knew of the federal lawsuit and so the Court will deem the asserted fact, that Solano learned of the suit within five days, admitted.  See D.N.M.LR-Civ. 56.1(b).  Solano's deposition makes clear, however, that he believed that only the City of Santa Fe had been sued, and so the Court will modify the asserted fact to accurately reflect to what Solano testified in his deposition.

[15]The Reply does not refer to this fact.  Accordingly, because the Plaintiffs make no attempt to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

on April 12, 2006, the Clerk of the Court entered default.  See Mitchell v. City of Santa Fe, No. CIV

05-1155, Motion and Application for Default Judgment, file April 11, 2006 (Doc. 6); Mitchell v.

City of Santa Fe, No. CIV 05-1155, Clerk's Entry of Default, filed April 12, 2006 (Doc. 10); MSJ

¶ 30, at 14 (setting forth this fact); Response at 15 (not disputing this fact).  The Court subsequently

granted the motion.  See Mitchell v. City of Santa Fe, No. CIV 05-1155, Order on Plaintiff's Motion

for Default Judgment, filed May 9, 2006 (Doc. 15)("Default Judgment"); MSJ ¶ 30, at 14 (setting

forth this fact); Response at 15 (not disputing this fact).  On April 20, 2006, five months after the

purported service of process on O'Brien, W. Mitchell filed a first amended complaint.  See Mitchell

v. City of Santa Fe, No. CIV 05-1155, First Amended Complaint for Civil Rights Violations, filed

April 20, 2006 (Doc. 13)("Mitchell's Amended Complaint"); MSJ ¶ 31, at 14 (setting forth this

fact); Response at 15 (not disputing this fact).  In Mitchell's Amended Complaint, he corrected the

spelling of O'Brien's name and O'Brien's title, and named the Board of County Commissioners of

the City of Santa Fe, in place of the City of Santa Fe.  See Mitchell's Amended Complaint ¶¶ 4-7,

at 1-2; MSJ ¶ 32, at 14-15 (setting forth this fact); Response at 15 (not disputing this fact); Response

at 18 (setting forth this fact).  Mitchell's Amended Complaint repeated verbatim the allegations that

O'Brien shot W. Mitchell in the back as W. Mitchell was walking away and when he posed no

legitimate threat.  See Mitchell's Amended Complaint ¶ 11, at 3; MSJ ¶ 32, at 15 (setting forth this

fact); Response at 15 (not disputing this fact).  As with the original complaint, W. Mitchell omits

any mention of the sword, his attacks on O'Brien, his criminal trial, or his related convictions.  See

Mitchell's Amended Complaint at 1-9; MSJ ¶ 32, at 15 (setting forth this fact); Response at 15 (not

disputing this fact).  Mitchell's Amended Complaint alleges that O'Brien acted within the course

and scope of his employment as a law enforcement officer of Santa Fe County, and under the color

of state law.  See Mitchell's Amended Complaint ¶ 12, at 15; MSJ ¶ 33, at 15 (setting forth this

fact); Response at 15 (not disputing this fact).  W. Mitchell and Mr. Montoya did not serve a copy of Mitchell's Amended Complaint on O'Brien.  See Mitchell v. City of Santa Fe, No. CIV 05-1155; MSJ ¶ 34, at 15 (setting forth this fact); Response at 15 (not disputing this fact).  The Clerk of the Court issued a summons as to the Board of County Commissioners, but W. Mitchell did not serve the Board of County Commissioners or the County Clerk.  See Mitchell v. City of Santa Fe, No. CIV 05-1155, Docket Entry Summons, filed April 20, 2006; Mitchell v. City of Santa Fe, No. CIV 05-1155, Clerk's Minutes, filed December 10, 2007 (Doc. 31)(noting that Mr. Montoya stated that he had chosen not to serve the County defendants); MSJ ¶ 34, at 15-16 (setting forth this fact); Response at 15 (not disputing this fact).

On December 10, 2007, the Court held a jury trial on the issue of damages in Mitchell v. City of Santa Fe, No. CIV 05-1155, in which neither O'Brien or the Board of County Commissioners participated nor attended.  See Mitchell v. City of Santa Fe, No. CIV 05-1155, Special Verdict Form, filed December 10, 2007 (Doc. 43); MSJ ¶ 35, at 16 (setting forth this fact); Response at 15 (not disputing this fact).  If that case had gone to trial on the merits, the defendants would have called most or all of the seven eyewitnesses to testify, and such witnesses would have testified that W. Mitchell made a frontal attack on O'Brien, while O'Brien was retreating.  See Statement of Probable Cause at 3-7; MSJ ¶ 36, at 16 (setting forth this fact).[16]  W. Mitchell testified at trial without cross-examination, although Mr. Montoya questioned him.  See Mitchell v. City of Santa Fe, No. CIV 05-

_____

[16]D. Mitchell contends that the asserted facts, what O'Brien's defense would have been, is immaterial.  See Response at 15.  Because whether a fact is relevant is a legal question, the Court will address that issue in its analysis and will not address it here.  See Wilson v. Jara, 2011 WL 5822729, at *2 ("Whether this fact is relevant is a legal argument, and the Court will not address [it] at this time, but will consider it in its legal analysis."); Ruiz v. City of Brush, 2006 WL 1816454, at *4 ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;][l]legal argument should be reserved for separate portions of the brief.'").

1155, Transcript of Hearing at 1-8 (December 10, 2007)(Doc. 27-8)("No. CIV 05-1155 Dec. 10,

2007 Tr."); MSJ ¶ 37, at 16 (setting forth this fact).[17]  W. Mitchell testified:

| | | |
|---|---|---|
| Q [by Montoya]: | | What were you doing at that moment? |
| A [by Mitchell]: | | I was standing, holding the fake sword that I used to drive off my neighbor's Rottweiler, who had attacked me that morning -- I did not injure the dog, mind you -- and looking out into the sky, spacing out wondering what the whether was going to be like that day. |
| Q: | | Did you see the officer approach you? |
| A: | | No, I did not.  His own testimony was that he approached by stealth. |

        * * * *

| | | |
|---|---|---|
| A: | | . . . The first I knew that somebody was standing behind me was when I heard a command to "Put down your weapon," bang, bang, bang. |
| Q: | | What was the bang, bang, bang? |
| A: | | He began firing before he finished the sentence. |
| Q: | | Was there anyone else near you? |
| A: | | Not that I saw. |
| Q: | | Were you facing the officer? |
| A: | | No. |

        * * * *

---

[17]D. Mitchell argues that the asserted fact, W. Mitchell's testimony, is immaterial, because the "Plaintiffs gave up their right to present a defense when Dennis O'Brien elected to ignore his duty to Answer Walter Mitchell's Complaint."  Response at 15.  D. Mitchell does not specifically controvert the asserted facts to which W. Mitchell testified, thus the Court will deem the fact of W. Mitchell's testimony and what he said admitted.  See D.N.M.LR-Civ. 56.1(b).  Furthermore, whether a fact is relevant is legal argument, which the Court will consider in its analysis section.  See Wilson v. Jara, 2011 WL 5822729, at *2; Ruiz v. City of Brush, 2006 WL 1816454, at *4.

A:                     Well, he shot me without giving me proper warning, shot me
                       in the back, which is generally considered dirty pool, shot me
                       when I was not a threat to anyone else, altered evidence and
                       concocted an absurd story afterwards to posit the scenario
                       that I had attacked him.

No. CIV 05-1155 Dec. 10, 2007 Tr. at 21:5-22:13 (Montoya, W. Mitchell); id. at 22:5-13 (Montoya,

W. Mitchell); id. at 49:13-17 (W. Mitchell); MSJ ¶ 37, at 16-17 (setting forth this fact); Response

at 15 (not disputing this fact).  The jury returned a verdict in favor of W. Mitchell in the amount of

three-million dollars, including punitive damages, and the Court entered a final judgment.  See

Special Verdict Form at 1-2; Final Judgment at 1, filed December 31, 2007 (Doc. 45)("05-1155

Final Judgment); MSJ ¶ 38, at 17 (setting forth this fact); Response at 15 (not disputing this fact).

On December 28, 2007, after the trial in abstentia and with his verdict, W. Mitchell filed a

dismissal without prejudice of his claims against Santa Fe County.  See Mitchell v. City of Santa

Fe, No. CIV 05-1155, Plaintiff's Rule 41 Dismissal of the Board of County Commissioners of Santa

Fe County, filed December 28, 2007 (Doc. 44); MSJ ¶ 39, at 17 (setting forth this fact); Response

at 15 (not disputing this fact).  On July 29, 2009, W. Mitchell filed a Notice of Lis Pendens against

O'Brien, which targeted O'Brien's personal residence in Santa Fe.  See Mitchell v. City of Santa

Fe, No. CIV 05-1155, Notice of Lis Pendens, filed July 29, 2009 (Doc. 47); MSJ ¶ 40, at 17 (setting

forth this fact); Response at 15 (not disputing this fact).  Cummings mailed a copy of the Default

Judgment to O'Brien two days after the Court filed that document.  See Mitchell v. City of Santa

Fe, No. CIV 05-1155, Affidavit of Brandon Cummings ¶ 7, at 1 (executed April 3, 2010), filed April

9, 2010 (Doc. 51-1); Response at 18 (setting forth this fact).[18]  O'Brien and the County of Santa Fe

_____

[18]The Reply does not refer to this fact.  Accordingly, because the Plaintiffs make no attempt
to specifically controvert the asserted fact, the Court will deem this fact admitted.  See D.N.M.LR-
Civ. 56.1.

first became aware of the three-million dollar judgment against O'Brien through an unrelated case and the resulting media publicity.  See O'Brien Aff. ¶ 5, at 2; MSJ ¶ 41, at 17-18 (setting forth this fact).[19]

### 4.      Ethical Misconduct of Mr. Montoya.

Mr. Montoya filed Mitchell v. City of Santa Fe, No. CIV 05-1155.  See MSJ ¶ 42, at 18 (setting forth this fact); Response at 16 (not disputing this fact).  On November 9, 2011, the Supreme Court of New Mexico suspended Mr. Montoya from the practice of law based on what it called "a

---

[19]The Plaintiffs assert that, "[i]n late February 2010, Plaintiffs (Dennis O'Brien and County of Santa Fe) first became aware of the proceedings and the existence of a three-million dollar judgment against O'Brien from 2007, by its disclosure in an unrelated case and resulting media publicity." MSJ ¶ 41, at 17-18 (setting forth this fact)(citing O'Brien Aff. ¶ 5, at 2).  O'Brien asserts that he was never served and that he "learned about the Default Judgment in late February, 2010, when I was contacted by an Assistant U.S. Attorney and reporters from KOAT-TV."  O'Brien Aff. ¶ 5, at 2.  D. Mitchell disputes this fact and asserts:

> Dennis O'Brien became aware of the proceedings when he was served with the Summons and Complaint.  Dennis O'Brien was further aware of the proceedings when a copy of the Judgment was mailed to him.  Furthermore, the Sheriff for the County of Santa Fe was quoted in the paper discussing the case and has admitted that he was aware of the case.

Response at 15-16 (citing Cummings Aff. ¶¶ 5, 9, at 2).  In the Cummings affidavit, Cummings avers that the summons and complaint were served on O'Brien.  See Cummings Aff. ¶ 5, at 2 ("I further affide and state that the items served on Defendant Dennis O'Brien, on behalf of Walter Mitchell were the Summons and Complaint.").  Additionally, D. Mitchell refers to an article in the Albuquerque Journal, in which the Sheriff was asked about the case and quoted as saying "Now I know why I haven't received it."  Mark Oswald, "Inventor Sues City for Shooting by Sheriff's Deputy," Albuquerque Journal, (dated November 7, 2005), filed May 3, 2012 (Doc. 32-5).  These documents specifically controvert the asserted fact that Plaintiffs were unaware of this case until February 2010.  These documents do not, however, address when the Plaintiffs became aware of the judgment against them.  Although D. Mitchell states that a copy of the judgment was mailed to O'Brien, he does not cite any evidence of that fact or that O'Brien received the judgment.  See D.N.M.LR-Civ. 56.1(b) ("Each fact in dispute must be numbered, and must refer with particularity to those portions of the record upon which the non-movant relies . . . .").  Accordingly, the Court will modify the asserted fact to refer only to the fact that the Plaintiffs were unaware of the judgment until February 2010.

deeply troubling mosaic of ethical misconduct," that "unquestionably calls for discipline and seriously calls into question Montoya's fitness to practice law." In re Montoya, 150 N.M. 731, 266 P.3d 11, 14 (2011); MSJ ¶ 43, at 18 (setting forth this fact).[20]  Some of the alleged misconduct included making false statements of fact and making material omissions of facts to courts as well as altering deposition testimony to favor his client.  See In re Montoya, 150 N.M. 731, 266 P.3d at 20; MSJ ¶ 43, at 18 (setting forth this fact); Response at 16 (not disputing this fact).  On multiple

_____

[20]D. Mitchell objects to the facts that the Plaintiffs assert in paragraphs 43 through 46, because they are immaterial.  See Response at 16.  He asserts:

> In this case there is no dispute that Dennis O'Brien was served with the Complaint and Summons and chose to ignore it.  Plaintiffs' attempt to slander Dennis W. Montoya is nothing more than a distraction from the fact that Dennis O'Brien tried to avoid his duty to the Court and is now liable as a result of a valid default.  The ad hominem attack on Mr. Montoya are irrelevant to the issues at hand in this case and are hyperbolic.  Movants admit that these allegations to cases having nothing to do with Mr. Mitchell's case.  Movants do not explain how Mr. Montoya allegedly induced Ken Johnson to lie about serving process on Dennis O'Brien, which is the essential issue in this case.  Moreover, to the extent that there is a recital of alleged misconduct by Montoya in the conduct of several cases, he has appeared many more times before this court and never drew disciplinary complaints for his conduct until 2010.  The attendant circumstances are to a significant extent known to this Court, and it is fruitless to engage in a re-hashing of these, other than to state the overwhelming majority of instances recited by the movants occurred in the context of representations before judges who did NOT make referrals to disciplinary counsel.  Mr. Montoya accepts responsibility for certain matters resulting in a one-year suspension of his license to practice law.  It is anticipated that he will be reinstated to practice soon.

Response at 16-17.  Whether a fact is relevant is a legal issue, which the Court will consider in its analysis section.  See Wilson v. Jara, 2011 WL 5822729, at *2 ("Whether this fact is relevant is a legal argument, and the Court will not address United States v. Abdendi at this time, but will consider it in its legal analysis."); Ruiz v. City of Brush, 2006 WL 1816454, at *4 ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;][l]egal argument should be reserved for separate portions of the brief.'").  Because D. Mitchell does not attempt to specifically controvert the asserted facts regarding any ethical sanctions Mr. Montoya has faced, the Court will deem those facts admitted and will indicate that those facts are undisputed.  See D.N.M.LR-Civ. 56.1(b).

occasions, the United States District Court for the District of New Mexico has sanctioned or chided Mr. Montoya for a variety of misconduct. See Doe v. Martinez, No. CIV 09-0104 WJ/WPL, Memorandum Opinion and Order at 15-19, filed June 11, 2009 (Doc. 34); Hernandez v. Potter, No. CIV 08-0323 JCH/CEG, Memorandum Opinion and Order at 11 n.4, filed August 4, 2009 (Doc. 51); MSJ ¶ 44, at 18-19 (setting forth this fact); Response at 16 (not disputing this fact). The United States Court of Appeals for the Tenth Circuit has also commented on and affirmed the imposition of various sanctions imposed on Mr. Montoya and his clients. See Holguin v. Burge, 340 F.App'x 250 (10th Cir. 2007)(unpublished); McGuinness v. Univ. N.M. Sch. of Med., 170 F.3d 974, 980 (10th Cir. 1998); Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., 70 F.3d 1172 (10th Cir. 1995); MSJ ¶ 45, at 19 (setting forth this fact); Response at 16 (not disputing this fact).

## PROCEDURAL BACKGROUND

On May 11, 2011, the Plaintiffs filed their Complaint to Set Aside Judgment. See Doc. 1. "This action is an independent action in equity to obtain relief from a judgment, and a motion to set aside a judgment for fraud upon the court," pursuant to rules 60(d)(1) and 60(d)(3) of the Federal Rules of Civil Procedure and the common law. Complaint to Set Aside Judgment at 1. The Plaintiffs are suing D. Mitchell, W. Mitchell's brother, because W. Mitchell died intestate on or about October 16, 2008, and because D. Mitchell is the court-appointed personal representative of his estate. See Complaint to Set Aside Judgment at ¶ 4, at 2. They assert that the Court has jurisdiction, pursuant to 28 U.S.C. § 1331, because "the judgment was entered in a civil action arising under the Constitution and laws of the United States, and the Court has inherent jurisdiction to redress fraud upon the Court" and because "this is a civil action between citizens of different states, where the matter in controversy exceeds the sum of $75,000." Complaint to Set Aside

Judgment ¶ 5, at 2-3.[21]  The Plaintiffs assert three Counts: (i) Count I -- Denial of Due Process to Dennis O'Brien; (ii) Count II -- Unfairness, Inequity and Miscarriage of Justice as to Santa Fe County; and (iii) Count III -- Fraud Upon the Court.  See Complaint to Set Aside Judgment at 15-17. The Plaintiffs demand a jury trial and ask that the Court: (i) set aside and make null and void the 05-1155 Final Judgment; (ii) vacate the Notice of Lis Pendens; (iii) award the Plaintiffs their costs and attorney's fees; and (iv) grant any other relief that the Court deems appropriate.  See Complaint to Set Aside the Judgment at 18.  On June 18, 2011, D. Mitchell filed the Answer by Defendant David Mitchell to Complaint to Set Aside Judgment.  See Doc. 6 ("Answer").  As affirmative defenses, D. Mitchell asserts that: (i) the doctrine of unclean hands bars the Plaintiffs' request for relief; (ii) the Plaintiffs have defaulted on their defenses and their allegations that they were not on notice of the Mitchell Complaint is a fraud on the Court; and (iii) the doctrine of laches bars the Plaintiffs' Complaint to Set Aside the Judgment.  See Answer ¶¶ 36-38, at 9.

On April 13, 2012, the Plaintiffs filed their MSJ.  See Doc. 27.  The Plaintiffs argue that there is no genuine dispute as to any material fact related to fraud on the Court and that the

---

[21]The Court does not believe it has diversity jurisdiction, under 28 U.S.C. § 1332, because "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."  28 U.S.C. § 1332(c)(2).  W. Mitchell was a citizen of New Mexico, as are O'Brien and the Board of County Commissioners.  See Mitchell v. City of Santa Fe, No. 05-1155, Complaint for Civil Rights Violations at 2, filed November 2, 2005 (Doc. 1)("Plaintiff Walter Mitchell is an adult resident and citizen of the state of New Mexico.").  The Court has federal question jurisdiction, however, because, "[u]nder elementary principles of fairness and justice, actions seeking relief from judgments based on alleged fraud upon the court should be treated as continuations of the former action."  Weldon v. United States, 70 F.3d 1, 4 (2d Cir. 1995).  Accord Switzer v. Coan, 261 F.3d 985, 988 n.5 (10th Cir. 2001)(noting that the Supreme Court held that independent actions "may be regarded as ancillary to the prior suit").  In United States v. Beggerly, the Supreme Court held that on "the question of jurisdiction the [subsequent] suit may be regarded as ancillary to the [prior] suit" and that it was "wrong to suggest that an independent action brought in the same court as the original lawsuit requires an independent basis for jurisdiction."  524 U.S. at 46 (citation omitted)(alterations in original).

undisputed evidence shows that the Plaintiffs are entitled to the vacation of the 05-1155 Final Judgment. See MSJ at 1. The MSJ is based only on Count III -- Fraud on the Court -- and the Plaintiffs assert that, if the Court grants the MSJ, Counts I and II would become redundant and moot. See MSJ at 5. The Plaintiffs argue that, although it is undisputed that the County of Santa Fe was never served with process in Mitchell v. City of Santa Fe, No. CIV 05-1155, there is a genuine dispute whether O'Brien was, or was not, served with a summons and the Mitchell Complaint. See MSJ at 20. The Plaintiffs contend that the issue of service of process and the Court's personal jurisdiction over O'Brien is irrelevant to the alleged fraud on the Court which the MSJ raises. See MSJ at 20. They assert that a default judgment does not entitle a party to obtain a verdict through the knowing, deliberate presentation of perjured testimony. See MSJ at 20.

The Plaintiffs argue that this action is based "upon a long-established doctrine that predates the Federal Rules of Civil Procedure but is expressly recognized therein, called an independent action in equity to obtain relief from a judgment." MSJ at 20 (citing Fed. R. Civ. P. 60(d)(1); United States v. Beggerly, 524 U.S. 38, 45-47 (1998); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2868, at 396 (3d ed. 2012)). They assert that an independent action is equitable in nature, is directed to the Court's sound discretion, and is not limited by any specific time deadline for its filing, other than laches. See MSJ at 21 (citing Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1273-75 (10th Cir. 1995); Winfield Assocs., Inc. v. Stonecipher, 429 F.2d 1087, 1090-91 (10th Cir. 1970); Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir. 1969)). They contend that a party should resort to an independent action only in "unusual and exceptional circumstances" to "prevent a grave miscarriage of justice."   MSJ at 21 (quoting United States v. Beggerly, 524 U.S. at 47; Crosby v. Mills, 413 F.2d at 1276). They argued that fraud is a cognizable, and the most common, ground for relief through an independent action. See MSJ at 21 (citing 11 Wright & Miller, supra

-23-

§ 2868, at 399).  They assert that courts have an inherent power to vacate a judgment that has been

obtained through a fraud on the court.  See MSJ at 21 (citing Universal Oil Prods. Co. v. Root

Refining Co., 328 U.S. 575, 580 (1946); Chavez v. City of Albuquerque, 402 F.3d 1039, 1043-44

(10th Cir. 2007)).  The Plaintiffs contend that there is no time limit to set aside a judgment obtained

through a fraud on the court and that neither laches nor unclean hands can bar a court's

consideration of the matter.  See MSJ at 21 (11 Wright & Miller, supra § 2870, at 409).

The Plaintiffs argue that "[a]lmost all of the principles that govern a claim of fraud on the

court are derived from the Hazel-Atlas case."  MSJ at 22 (citing 11 Wright & Miller, supra, § 2870,

at 411).  They assert that, in Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944),

the Supreme Court of the United States "faced a case in which the Circuit Court of Appeals had

affirmed the validity of a patent based in part on an article published in a trade journal, ostensibly

by a disinterested expert."  MSJ at 22.  They contend that, when subsequent evidence revealed that

one of the patent-holder's attorneys wrote the article, the Supreme Court ordered the judgment set

aside and held:

> [T]ampering with the administration of justice in the manner indisputably shown
> here involves far more than an injury to a single litigant.  It is a wrong against the
> institutions set up to protect and safeguard the public, institutions in which fraud
> cannot complacently be tolerated consistently with the good order of society.  Surely
> it cannot be that preservation of the integrity of the judicial process must always wait
> upon the diligence of litigants.  The public welfare demands that the agencies of
> public justice be not so impotent that they must always be mut and helpless victims
> of deception and fraud.

MSJ at 22-23 (quoting Hazel-Atlas Glass Co. v. Harford Empire Co., 322 U.S. at 246).  They

emphasize that the Tenth Circuit has recognized that a federal court has an "inherent power" to "set

aside fraudulently begotten judgments," and note that the perjury at issue in Chavez v. City of

Albuquerque was by one of Mr. Montoya's clients.  MSJ at 23 (quoting Chavez v. City of

Albuquerque, 402 F.3d at 1043-44).  The Plaintiffs assert that the perjury in that case was uncovered during cross-examination of the plaintiff and that "here, of course, there was no adverse party to expose Mitchell's lies."  MSJ at 23.

The Plaintiffs contend that the three-million dollar 05-1155 Final Judgment rests upon fraud, perjury, and a deliberate scheme to manipulate the judicial process.  See MSJ at 23-24.  They argue that the undisputed evidence demonstrates that W. Mitchell and Mr. Montoya were aware that W. Mitchell had been indicted, tried, and convicted of attacking O'Brien.  See MSJ at 24.  They assert that W. Mitchell and Mr. Montoya has actual knowledge of the State Findings of Fact, which "made undisputably clear, among other things, that O'Brien was a Santa Fe County Sheriff's Deputy . . . and that Mitchell had attacked O'Brien three times with a sword, charging while O'Brien backed up in retreated."  MSJ at 24.  They further assert that "[n]o honest person (party or attorney) could read the state court's Findings of Fact and Conclusions of Law and be confused, to any extent whatsoever, as to the true facts."  MSJ at 24.  The Plaintiffs contend that W. Mitchell acknowledged the "true facts" during his state criminal sentencing, when he told Judge Pfeffer that "there is no doubt in my mind that I started the ball rolling that morning" and that "attacking four armed police officers with a sword" was "sheer madness."  MSJ at 24.  They also emphasize that W. Mitchell apologized to O'Brien for putting him "through the trauma."  MSJ at 24-25.  They argue that, notwithstanding W. Mitchell's and Mr. Montoya's knowledge of the true facts, W. Mitchell engaged in a scheme to defraud the Court and pervert the justice system.  See MSJ at 25.  The Plaintiffs note that the W. Mitchell Complaint was filed against the City of Santa Fe, rather than the Board of County Commissioners, and against O'Brien as a Santa Fe Police Department Officer, rather than a Santa Fe County Deputy Sheriff.  See MSJ at 25.  They argue that the W. Mitchell Complaint is a "bundle of lies" alleging that O'Brien shot W. Mitchell in the back at a time when W. Mitchell

posed no threat.  MSJ at 25.  The Plaintiffs assert that "[w]e likely will never know the full details of the 'service' of the original complaint: the summons violated rule 4(a)(1)(A) as to form, and on its face does not clearly name Dennis O'Brian [sic] as a defendant."  MSJ at 25.  They note that O'Brien has stated, under oath, that he was never served and that he would not have ignored such a pleading.  See MSJ at 25-26 (citing O'Brien Aff. ¶¶ 5-6, at 2).  They argue that the Signed Return of Service is ambiguous at best and that the Sheriff Department's internal paperwork suggests that the service was of a complaint involving a different, pro se plaintiff.  See MSJ at 26.  They point out that the officially issued summons filed with the Signed Return of Service had been altered with white out.  See MSJ at 26.

The Plaintiffs argue that, once W. Mitchell had obtained a default judgment, W. Mitchell and Mr. Montoya "went to town."  MSJ at 26.  They note that, many months after the entry of default, W. Mitchell filed an amended complaint with corrections and substituting the Board of County Commissioners for the City of Santa Fe.  See MSJ at 26.  They emphasize that, "[n]ot surprisingly, Montoya did not serve the amended complaint on either defendant."  MSJ at 27 (citing Clerk's Minutes at 1).  They note that Mr. Montoya convinced the Court that notice of the upcoming trial on damages need not be give to O'Brien or the Board of County Commissioners, and argue that such notice "undoubtedly would have exposed the fraud, very quickly."  MSJ at 27 (citing Mitchell v. City of Santa Fe, No. CIV 05-1155, Memorandum Opinion and Order, filed May 9, 2007 (Doc. 18)). The Plaintiffs argue that, without an adverse party to oppose them, Mr. Montoya and W. Mitchell knowingly presented perjured testimony to convince the jury to award large damages.  See MSJ at 27.  They contend that, after hearing W. Mitchell's testimony -- in which he testified that O"Brien stealthily snuck up behind W. Mitchell and shot him in the back -- the jury awarded him three-million dollars.  See MSJ at 28.  The Plaintiffs argue that the "Final Judgment (Doc. No. 45) rests

upon a rotten structure of perjury and intentional abuse of the system and cannot stand."  MSJ at 28.

On May 3, 2012, D. Mitchell filed his Response.  See Doc. 32.  D. Mitchell asserts: (i) that O'Brien "failed to seek relief from the default and Default Judgment entered against him within a reasonable time under Fed.R.Civ.P. 55(c) and 60(b)"; (ii) that O'Brien "has not shown 'good cause' to set aside the default and the Default Judgment entered herein under Fed.R.Civ.P. 55(c)"; (iii) that O'Brien's "failure to establish that the entry of the Default Judgment was the result of 'mistake, inadvertence, surprise or excusable neglect' is fatal to his Motion"; and (iv) that the Court should deny the MSJ based on O'Brien's "failure to sufficiently present to the Court the requisite meritorious defense."  Response at 2-3.  D. Mitchell argues that, if treated as a rule 60(b) motion, the MSJ is untimely, because it was filed more than one year after entry of the judgment.  See Response at 18.  He asserts that O'Brien relies on rule 60(b), but does not specify a subsection thereof.  See Response at 18.  He notes that, under rule 60(c), a motion under rules 60(b)(1), (b)(2), and (b)(3) must be made no later than one year after the entry of judgment, and that "O'Brien's motion was filed March 23, 2010 more than two years after the entry of the judgment."  Response at 19.  D. Mitchell further asserts that "O'Brien's motion is not proper under subsection (6)" because fraud is specifically enumerated in rule 60(b)(3).  Response at 19.  He contends that, because the underlying basis of O'Brien's MSJ is fraud, it is untimely, and the Court should deny the motion.  See Response at 19 (citing Zurich N. Am. v. Matrix Serv., 426 F.3d 1281, 1289 (10th Cir. 2005)).

D. Mitchell argues that O'Brien did not act within a reasonable time in requesting that the Court set aside the default judgment entered against him.  See Response at 20.  He emphasizes that the Court and the litigants have a vested interest in finality, and that the reasons for the delay are implausible, because: (i) O'Brien was personally served with process; and (ii) the Default Judgment was mailed to O'Brien's home.  See Response at 20.  He contends that "O'Brien had full practical

ability to know immediately upon receipt of the judgment of the grounds on which he now seeks relief from said judgment, yet he failed to urge them for at least two more years." Response at 20. He notes that, in the interim, W. Mitchell died, "undermining the Estate of Walter Mitchell's ability to reconstruct its case at this late date." Response at 20. D. Mitchell argues that, if this case is reopened, "the result will be catastrophic [sic] in this Circuit civil rights claims do not survive the death of the litigant." Response at 20. He asserts that O'Brien fails to demonstrate good cause why the default judgment should be overturned under rule 55(c) or offer a meritorious defense. See Response at 21. He further asserts that whether a rule 60(b) motion is filed within a reasonable time depends upon "the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the prejudice to other parties." Response at 22-23 (citing United States v. All Monies from Account No. PO-204,765.0, 162 F.3d 1174, 1998 WL 769811 (10th Cir. 1998)(unpublished table decision)). D. Mitchell argues that the Court and W. Mitchell's estate have an interest in finality. See Response at 23. He contends that O'Brien's "self-serving claim that all of the paperwork showing that he was properly served, which paperwork was generated by his own agency . . . , is wrong and he simply was not served" is "untenable." Response at 24. He asserts that, given O'Brien's awareness of the suit, "there is no reasonable basis for concluding that O'Brien and Santa Fe County had no practical ability to learn earlier of the grounds upon which they now rely in seeking relief from judgment." Response at 25. He emphasizes the prejudice he will face, because W. Mitchell is now deceased. See Response at 26.

With respect to rule 60(b), D. Mitchell argues that the only applicable subsection is rule 60(b)(1), relating to mistake, inadvertence, or excusable neglect. See Response at 26-27. He reiterates that O'Brien "makes no adequate explanation as to why he was taken by surprise at being asked about the judgment . . . given that he was provided a copy of the judgment rendered against

him by Walter Mitchell." Response at 27. He argues that, "[b]y failing to respond to the Complaint . . . , O'Brien has deprived Walter Mitchell of the ability to conduct discovery, preserve evidence, obtain documentation, indeed even of bringing this action at all." Response at 28. He asserts that O'Brien offers no credible reason for his neglect. See Response at 29. He notes that, "even when judgment was rendered and a copy provided to him, O'Brien did nothing for more than two years." Response at 29. He also points out that O'Brien has offered no meritorious defense. See Response at 30. D. Mitchell argues that the State Findings of Fact "does not effectively address the most damning accusation against [O'Brien], the claim that Walter Mitchell was shot in the back." Response at 30-31. He asserts that O'Brien's attempted meritorious defense "essentially consists of nothing more than restating that Walter Mitchell was convicted of aggravated battery and reciting findings made by the criminal trial court." Response at 31. He emphasizes that the excessive-force jurisprudence does not require W. Mitchell to prove that he did not commit a crime "as a prerequisite to showing that the police officer O'Brien used excessive force." Response at 31.

Turning to O'Brien's independent action in equity, D. Mitchell asserts that rule 60(d)(1) "is not an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action if the rule had not been adopted." Response at 33. He argues that an independent action in equity is a "narrow avenue" for cases of injustice, which demand a departure from a rigid adherence to the doctrine of res judicata. Response at 33-34 (citing Sindar v. Garden, 284 F.App'x 591, 596-97 (10th Cir. 2008)(unpublished)). He contends that the United States Court of Appeals for the Eighth Circuit has established:

> The indispensable elements of such a cause of action are (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and

(5) the absence of any adequate remedy at law.

Response at 34 (citing Nat'l Sur. Co. v. State Bank of Humboldt, Neb., 120 F. 593 (8th Cir. 1903)).

He asserts that the differences between a relief from a default judgment under the Federal Rules of

Civil Procedure and relief under an independent action in equity "are for the most part cosmetic."

Response at 34.  D. Mitchell argues that O'Brien has only himself to blame for his situation and that

the Court should deny the MSJ.  See Response at 36.

On May 16, 2012, the Plaintiffs filed their Reply in Support of Motion for Summary

Judgment.  See Doc. 33 ("Reply").  The Plaintiffs argue that the Response "rests upon the erroneous

premise that Plaintiffs have moved to set aside a default judgment pursuant to Fed.R.Civ.P. 55(c)

and 60(b)."  Reply at 1.  They assert that D. Mitchell "utterly and completely fails to address a single

one of the Rule 60(d)(3) 'fraud on the court' cases cited, discussed, and relied on by Plaintiffs."

Reply at 2.  They contend that W. Mitchell's criminal behavior and conviction are relevant, because

the Supreme Court has made clear that excessive force is "judged by the 'objective reasonableness

standard,'" in which the behavior of the suspect is key.  Reply at 5 (citing Graham v. Connor, 490

U.S. 386, 396 (1989)).  The Plaintiffs also argue that Mr. Montoya's conduct is relevant, because

"the law regarding fraud on the court suggests that the attorney's involvement in the allegedly

fraudulent conduct is highly relevant, and perhaps essential to obtaining relief."  Reply at 6 (citing

11 Wright & Miller, supra § 2870, at 420).

The Plaintiffs assert that the "gist" of D. Mitchell's defense is to shift the focus from W.

Mitchell and Mr. Montoya, to O'Brien.  Reply at 7.  They note that D. Mitchell "repeatedly argues

that Dennis O'Brien was served" and that he ignored the suit, such that relief is precluded.  Reply

at 8.  The Plaintiffs argue, however, that whether O'Brien was served is irrelevant to a motion

claiming fraud on the court.  See Reply at 8.  They emphasize that default "is not a license to

defraud." Reply at 8 (citing 11 Wright & Miller, supra § 2870, at 412).  They admit that the service

issue is disputed.  See Reply at 8.  They contend that, regardless of service of process, the

undisputed evidence establishes that the 05-1155 Final Judgment was based on false and misleading

statements, and omissions of material facts.  See Reply at 10.

The Court held a hearing on May 18, 2012.  The Plaintiffs began recounting the procedural

history of the case.  See Transcript of Hearing at 3:12-4:23 (May 18, 2012)(Dickman)("May 18,

2012 Tr.").  The Court asked to what authority the Plaintiffs would cite to educate it regarding rules

60(d)(1) and (d)(3).  See May 18, 2012 Tr. at 4:24-5:3 (Court).  The Plaintiffs suggested that Federal

Practice & Procedure by Professors Charles Wright and Arthur Miller is the best resource.  See May

18, 2012 Tr. at 5:4-13 (Dickman).  They emphasized that the MSJ is on only Count 3 of the

Complaint to Set Aside Judgment based on fraud on the Court.  See May 18, 2012 Tr. at 5:20-6:8

(Dickman).  They asserted that Count 3 was the claim most susceptible to summary judgment.

See May 18, 2012 Tr. at 6:15-7:4 (Dickman).  They argued that the service issue is irrelevant to

Count 3, that there is not dispute as to any material fact, and that the Court has great discretion,

because it is an equity action.  See May 18, 2012 Tr. at 7:5-17 (Dickman).  The Court then asked

whether the fraud had to contribute to the default judgment or whether any fraud was sufficient to

set aside the 05-1155 Final Judgment.  See May 18, 2012 Tr. at 7:18-23 (Court).  The Plaintiffs

responded that the judgment must be the product of fraudulent conduct and argued that the fraud in

this case was much more egregious than in the other cases they had found.  See May 18, 2012 Tr.

at 7:24-8:17 (Dickman).  They asserted that, in United States v. Beggerly, the United States brought

a quiet title action regarding land in Mississippi and that, during discovery the United States asserted

that it had no documents regarding private ownership of the land, but later the landowners found a

document in the National Archives demonstrating private ownership.  See May 18, 2012 Tr. at 8:18-

-31-

9:22 (Dickman).  They stated that the landowners filed an action for fraud on the court, and the Supreme Court found, in a unanimous opinion, that the evidence demonstrated, at best, that the United States did not do a thorough search during discovery and that there was no fraud.  See May 18, 2012 Tr. at 9:22-10:6 (Dickman).  The Plaintiffs contrasted the United States v. Beggerly with Hazel-Atlas Glass Co. v. Hartford Empire Co., in which the Supreme Court suggested that fraud on the court involved fraudulent conduct such as forgery or perjury.  See May 18, 2012 Tr. at 10:6-8 (Dickman).

The Plaintiffs stated that, in Hazel-Atlas Glass Co. v. Hartford Empire Co., the fraud occurred when a patent applicant's lawyer wrote a scholarly article and pretended that it was written by an expert in the field when the company when to the patent office.  See May 18, 2012 Tr. at 11:3-15 (Dickman).  They represented a lawsuit was instituted on the basis of the patent and, even though the article was one of several bases for the decision, the Supreme Court found that it was fraud on the court.  See May 18, 2012 Tr. at 12:8-14:2 (Dickman).  They argued that fraud on the court is a flexible concept and that due diligence is irrelevant, because the courts are investigating the machinery of justice.  See May 18, 2012 Tr. at 14:3-12 (Dickman).  They contended that the laches and unclean hands doctrines do not apply, because the court is the party that is objectively wronged.  See May 18, 2012 Tr. at 14:16-15:1 (Dickman).  They next discussed Chavez v. City of Albuquerque, which vacated a judgment based on perjury.  See May 18, 2012 Tr. at 15:2-11 (Dickman).  The Plaintiffs also emphasized that the Response does not discuss any cases involving fraud on the court and that, instead, it focuses on rule 60(b) cases.  See May 18, 2012 Tr. at 15:16-16:4 (Dickman).  They then recounted the facts of the state criminal trial and the filing of the Mitchell Complaint.  See May 18, 2012 Tr. at 16:15-20:23 (Dickman).  They reiterated that the Mitchell Complaint does not mention W. Mitchell's criminal trial or conviction.  See May 18, 2012

Tr. at 20:24-21:2 (Dickman).  The Plaintiffs discussed the service of process issue, but emphasized that it is irrelevant to the fraud-on-the-court claim.  See May 18, 2012 Tr. at 21:3-6 (Dickman).  The Plaintiffs suggested that the handwritten alterations to the Issued Summons constitute tampering with that document and noted that the Signed Return of Service does not say who was served or in what case.  See May 18, 2012 Tr. at 22:7-25 (Dickman).  They argued that O'Brien is one hundred percent certain that he did receive any summons, because he would not have ignored this case.  See May 18, 2012 Tr. at 23:20-24:3 (Dickman).  They noted that, after the default judgment was entered, the Court, at Mr. Montoya's urging, determined that it did not need to give the Plaintiffs notice of the jury trial on damages and argued that the Court's decision was wrong.  See May 18, 2012 Tr. at 25:24-27:1 (Dickman).

    With respect to W. Mitchell's testimony at the damages trial, the Plaintiffs asserted that W. Mitchell swore that he was contemplating the weather when O'Brien snuck up behind him and shot him three times in the back.  See May 18, 2012 Tr. at 27:2-11 (Dickman).  They argued that W. Mitchell's testimony was a fraud on the court.  See May 18, 2012 Tr. at 27:14-18 (Dickman).  They contended that, in Chavez v. City of Albuquerque, the plaintiff also perjured himself on the stand and the Tenth Circuit held that a court has an inherent power to vacate a judgment based on fraud on the court, such as perjury.  See May 18, 2012 Tr. at 29:4-21 (Dickman).  They asserted that, in this case, the Court had no reason to be aware of the criminal trial and conviction, and that the judgment was based on a "rotten" structure.  May 18, 2012 Tr. at 29:22-30:10 (Dickman).  The Court asked whether the issue was about a fraud that procured the final judgment, which incorporated the three-million dollar award.  See May 18, 2012 Tr. at 31:20-22 (Court).  The Plaintiffs agreed, but clarified that they believed that there was also fraud which predated the default.  See May 18, 2012 Tr. at 31:23-32:3 (Court, Dickman).  The Court then asked where, in the

-33-

state criminal proceeding, W. Mitchell admitted that he was shot from the front.  See May 18, 2012
Tr. at 32:21-33:1 (Court).  The Plaintiffs pointed the Court to the State Findings of Fact, which find,
beyond a reasonable doubt, that W. Mitchell was advancing on O'Brien.  See May 18, 2012 Tr. at
33:2-12 (Dickman).  They also argued that W. Mitchell admitted that he started the ball rolling that
morning.  See May 18, 2012 Tr. at 33:13-23 (Dickman).  They Court then asked whether perjury
was a question that the Court could decide on summary judgment.  See May 18, 2012 Tr. at 34:2-7
(Court).  The Plaintiffs asserted that the Court has the State Findings of Fact, made beyond a
reasonable doubt, and his testimony was inconsistent with those findings.  See May 18, 2012 Tr. at
34:7-25 (Court, Dickman).  The Court then asked whether it had to accept the State Findings of Fact
under the doctrine of collateral estoppel.  See May 18, 2012 Tr. at 35:1-3 (Court).  The Plaintiffs
argued that it did.  See May 18, 2012 Tr. at 35:4 (Dickman).  The Court asked whether those
findings were also binding on W. Mitchell.  See May 18, 2012 Tr. at 35:7-9 (Court).  The Plaintiffs
contended that collateral estoppel is a huge part of this case and noted that W. Mitchell waived his
right to appeal the State Findings of Fact.  See May 18, 2012 Tr. at 36:2-37:5 (Dickman).  They
asserted that "there is no way in the world" to reconcile the testimony W. Mitchell provided in
Mitchell v. City of Santa Fe, No. CIV 05-1155.  May 18, 2012 Tr. at 37:6-24 (Dickman).  The Court
asked whether the fraud was that, in the state criminal case, the State Findings of Fact conclude that
W. Mitchell was advancing on O'Brien and, in the Court's civil case, W. Mitchell testified that he
was shot from behind.  See May 18, 2012 Tr. at 38:2-5 (Court).  The Plaintiffs agreed, but also
pointed to W. Mitchell's statements at the sentencing hearing where he asserted that he got the ball
rolling that morning and that it would be sheer madness to attack four officers with a sword.  See
May 18, 2012 Tr. at 38:6-23 (Dickman).

The Court asked whether, if it agreed with the Plaintiffs, it would be setting aside only the

final judgment or the default judgment as well.  See May 18, 2012 Tr. at 41:1-2.  The Plaintiffs asserted that they believe the Court can set aside both, because, setting aside the service issue, the default was based on a fraudulent document -- the Mitchell Complaint.  See May 18, 2012 Tr. at 41:2-11 (Dickman).  They argued that the Mitchell Complaint was a "pack of lies" and that it relies on the same falsehood -- that W. Mitchell was shot in the back.  May 18, 2012 Tr. at 41:12-25 (Dickman).  They contended that the Court would be well within its power to find that there is nothing left to litigate, because the State Findings of Fact are binding.  See May 18, 2012 Tr. at 42:8-24 (Dickman).

D. Mitchell first addressed Hazel-Atlas Co. v. Hartford Empire Co., in which the Supreme Court found that "every element of fraud here disclosed demands the exercise of the history power of equity" and argued that here the case for fraud is weaker because it rests on the possibility of perjury.  May 18, 2012 Tr. at 46:1-14 (Juarez).  He asserted that the defendant in that case deliberately planned to defraud the patent office and the United States Court of Appeals for the Third Circuit.  See May 18, 2012 Tr. at 46:15-21 (Juarez).  He argued that part of the standard presented in United States v. Beggerly's discussion of the equities is the absence of fault or negligence on the part of the Plaintiffs.  See May 18, 2012 Tr. at 46:22-47:6 (Juarez).  D. Mitchell contended that, if inconsistencies provided a basis to overturn a judgment, then the Court will kill the judicial system.  See May 18, 2012 Tr. at 47:6-8 (Juarez).  He asserted that W. Mitchell never testified at the criminal trial.  See May 18, 2012 Tr. at 47:18-19 (Juarez).  The Court asked, assuming that it must take the State Findings of Fact as true, whether those findings and W. Mitchell's testimony during the damages trial were irreconcilable.  See May 18, 2012 Tr. at 47:20-25 (Court).  D. Mitchell pointed out that the state criminal trial was uncontested and that W. Mitchell was not the same as the plaintiff in Chavez v. City of Albuquerque who repeatedly lied.

-35-

See May 18, 2012 Tr. at 48:1-6 (Juarez).  The Court asked whether D. Mitchell could reconcile the finding that W. Mitchell was advancing on the deputies with W. Mitchell's testimony that he was shot in the back.  See May 18, 2012 Tr. at 48:18-23 (Juarez).  D. Mitchell stated that he did not know whether W. Mitchell turned at some point or what medical evidence was presented during the state criminal trial.  See May 18, 2012 Tr. at 48:24-49:7 (Juarez).  He argued that W. Mitchell's convictions do not bar an excessive-force action.  See May 18, 2012 Tr. at 49:14-24 (Juarez).  He contended that the only evidence before the Court is an uncontested finding from a state criminal trial, in which the attorney made a tactical decision not to put his client on the stand, and W. Mitchell's testimony.  See May 18, 2012 Tr. at 49:25-50:11 (Juarez).  D. Mitchell asserted that the limited evidence before the Court is not enough to establish perjury or fraud on the court.  See May 18, 2012 Tr. at 50:12-14 (Juarez).

    D. Mitchell argued that United States v. Beggerly and Hazel-Atlas Co. v. Hartford Empire Co. were about gross injustices in unprecedented circumstances.  See May 18, 2012 Tr. at 50:21-23 (Juarez).  He pointed to United States v. Beggerly, in which the Supreme Court found that a failure to disclose evidence in discovery is not a gross injustice that demands a judgment be vacated.  See May 18, 2012 Tr. at 51:3-5 (Juarez).  He argued that such behavior is part of a regular lawsuit and is no different than the inconsistences before the Court.  See May 18, 2012 Tr. at 51:5-12 (Juarez).  He also argued that here there are equities on both sides, because of the Plaintiffs' negligence and the likelihood that W. Mitchell's estate will be left without a remedy.  See May 18, 2012 Tr. at 52:4-9 (Juarez).  He emphasized that, the first time W. Mitchell made a sworn statement about how he recalls the events of the incident, W. Mitchell testified that he was shot in the back.  See May 18, 2012 Tr. at 52:15-23 (Juarez).  The Court asked how it can reconcile the undisputed facts with W. Mitchell's testimony and whether it could say that W. Mitchell's testimony was accurate.  See May

18, 2012 Tr. at 54:3-6 (Court).  D. Mitchell responded that the Court does not have to reconcile those statements, because the real question is whether W. Mitchell's testimony was perjury, and emphasized that the Plaintiffs are asking the Court to find that it was perjured testimony.  See May 18, 2012 Tr. at 54:15-23 (Juarez).  The Court asked whether the fact that D. Mitchell did not contest several of the findings of fact which conflict with W. Mitchell's testimony means that the Court must conclude that W. Mitchell was not telling the truth in the damages portion of his case.  See May 18, 2012 Tr. at 56:2-6 (Court).  D. Mitchell disagreed and asserted that the State Findings of Fact were established "by a lack of contest," and, although now W. Mitchell's testimony stands against those findings, the tension between the Judge Pfeffer's findings and W. Mitchell's testimony does not establish fraud on the court.  May 18, 2012 Tr. at 56:7-19 (Juarez).

The Plaintiffs asserted that they do not understand what D. Mitchell means when he argues that the State Findings of Fact were uncontested, because the findings were the result of a two-day trial.  See May 18, 2012 Tr. at 58:15-19 (Dickman).  The Court asked how it could say that a person commits fraud, when he or she never takes the stand in a criminal proceeding and then later, in a civil proceeding, testifies in a manner wildly inconsistent with a jury verdict.  See May 18, 2012 Tr. at 58:23-59:19 (Court, Dickman).  The Court stated that, ordinarily, the Court would not call that perjury, but the criminal defendant's version of events.  See May 18, 2012 Tr. at 59:20-60:4 (Court). The Plaintiffs argued that there is a difference here, because the Court is faced with State Findings of Fact that are proven beyond a reasonable doubt and are binding.  See May 18, 2012 Tr. at 60:5-11 (Dickman).  The Court stated that, in this case, it is not faced with relitigating the facts, but litigating whether there was fraud.  See May 18, 2012 Tr. at 61:9-12 (Court).  The Court then asked, if it finds that this testimony was fraud, whether every defendant who appeals his conviction would be committing fraud on the court.  See May 18, 2012 Tr. at 62:18-20 (Court).  The Plaintiffs responded

that here W. Mitchell did not appeal, he accepted the State Findings of Fact, and then presented a complaint which contained contradictory facts. See May 18, 2012 Tr. at 62:20-25 (Dickman). They asserted that there is no way to reconcile W. Mitchell's testimony with the State Findings of Fact and that to argue that, because W. Mitchell did not testify in the state criminal proceeding, there is no perjury, is "simply disingenuous." May 18, 2012 Tr. at 63:1-5 (Dickman). The Plaintiffs also argued that the Court should look at W. Mitchell's testimony during the state sentencing which are irreconcilable with his testimony during the damages trial. See May 18, 2012 Tr. at 63:5-15 (Dickman).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine

-38-

issue for trial as to those dispositive matters for which it carries the burden of proof." (internal

quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely

disputed must support the assertion by . . . . citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a

properly supported motion for summary judgment to "rest on mere allegations or denials of his [or

her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of

Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th

Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in his complaint, but must respond with specific facts

showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party

"avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific

facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D.

Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452

F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party

cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary

judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer,

2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

　　　　To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid

summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING RULE 60(d)

Rule 60(d) states: "This rule does not limit a court's power to . . .  (1) entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).  The advisory committee notes state: "If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent

action to set aside a judgment upon those principles which have heretofore been applied in such an

action." Fed. R. Civ. P. 60 advisory committee's note to the 1946 amendment.  Rule 60(d)(1) "is

not an affirmative grant of power but merely allows continuation of whatever power the court would

have had to entertain an independent action if the rule had not been adopted." 11 Wright & Miller,

supra § 2868, at 396.  In Sindar v. Garden, 284 F. App'x 591 (10th Cir. 2008), the United States

Court of Appeals for the Tenth Circuit stated:

> Rule 60 contains a saving clause that provides that the rule "does not limit a court's
> power to: (1) entertain an independent action to relieve a party from a judgment,
> order, or proceeding." Fed. R. Civ. P. 60(d).  The Supreme Court has explained that
> "an independent action should be available only to prevent a grave miscarriage of
> justice." United States v. Beggerly, 524 U.S. 38, 47 . . . (1998).  To prevent the Rule
> 60 restrictions from "be[ing] set at naught," independent actions must "be reserved
> for those cases of 'injustices which, in certain instances, are deemed sufficiently
> gross to demand a departure' from rigid adherence to the doctrine of res judicata."
> Id. (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238,
> 244 . . . (1944)).  Thus, we have noted that the independent-action clause provides
> only a "narrow avenue." [United States v. Buck, 281 F.3d 1336, 1341 (10th
> Cir.2002)].

284 F. App'x at 596-97.  The Eighth Circuit summarized the elements of an independent action in

equity long before the adoption of the Federal Rule of Civil Procedure:

> The indispensable elements of such a cause of action are (1) a judgment which ought
> not, in equity and good conscience, to be enforced; (2) a good defense to the alleged
> cause of action on which the judgment is founded; (3) fraud, accident, or mistake
> which prevented the defendant in the judgment from obtaining the benefit of his
> defense; (4) the absence of fault or negligence on the part of the defendant; and (5)
> the absence of any adequate remedy at law.

11 Wright & Miller M. Kane, supra § 2868, at 397 (quoting Nat'l Sur. Co. v. State Bank of

Humboldt, Neb., 120 F. 593 (8th Cir. 1903)).  "Resort to an independent action may be had only

rarely, and then only under unusual and exceptional circumstances." 11 Wright & Miller, supra

§ 2868, at 397-98.

Rule 60(d)(3) similarly provides that rule 60 does not limit a court's power to "set aside a

judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  The power to vacate a judgment based

on fraud on the court is an inherent power.  See 11 Wright & Miller, supra § 2870, at 409 (citing

Univ. Oil Prods. v. Root Refining Co., 328 U.S. 575, 580 (1946)).  There is no time limit on setting

aside a judgment on this ground, nor can laches or the doctrine of unclean hands bar consideration

of this matter.  See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 246; Martina Theatre

Corp. v. Schine Chain Theatres, Inc., 278 F.2d 798, 801 (2d Cir. 1960); Wilkin v. Sunbeam Corp.,

405 F.2d 165, 166 (10th Cir. 1968).  If there was fraud on the court, the judgment should be vacated,

and "the guilty party denied all relief."  11 Wright & Miller, supra § 2870, at 413 (citing Hazel-Atlas

Glass Co. v. Hartford Empire Co., 322 U.S. at 250-51; Root Refining Co. v. Univ. Oil. Prods. Co.,

169 F.2d 514, 534-35 (3d Cir. 1948)).  In defining fraud on the court, the United States Court of

Appeals for the Ninth Circuit has held that "it is necessary to show an unconscionable plan or

scheme which is designed to improperly influence the court in its decision."  England v. Doyle, 281

F.2d 304, 309 (9th Cir. 1960).  Professors Wright and Miller have cautioned:

> Any fraud connected to the presentation of a case to a court is a fraud upon the court,
> in a broad sense.  That cannot be the sense in which the term is used in the final
> saving clause . . . .  The remedy for most cases of fraud must continue to be by
> motion under Rule 60(b)(3) or by an independent action, subject to the procedural
> limitations applicable to those remedies.

11 Wright & Miller, supra § 2870, at 415.  To that end, they have described cases of perjured

evidence as "troublesome," and assert that some courts have suggested that perjury is fraud on the

court only where an officer of the court is party to the perjury.  11 Wright & Miller, supra § 2870,

at 419-20.

Hazel-Atlas Glass Co. v. Hartford Empire Co. is the seminal Supreme Court case on fraud

on the court.  In that case, attorneys and agents for the respondent, to help it obtain a patent,

prepared and submitted a trade journal article to the United States Patent Office, which they

represented was expert in the field had written, but one of the respondent's attorneys in fact wrote the article.  See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 240.  The Patent Office granted the respondent's application, and it brought suit against the petitioner for infringement.  See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 241.  During an appeal from that case, the respondent's attorneys referred the Third Circuit to the article and, relying in part on the article, the Third Circuit concluded that the patent was valid.  See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 242.  Several years later, the petitioner learned of the article's origins and brought it to the attention of the Third Circuit, which refused to grant relief.  See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 244.  The Supreme Court found that "every element of fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments."  Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 245.  It held:

> This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury.  Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.

Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. at 245.

The Tenth Circuit defined the nature of "fraud on the court" in Bulloch v. United States, 763 F.2d 1115 (10th Cir. 1985)(en banc), where it held:

> Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court . . . It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function -- thus where the impartial functions of the court have been directly corrupted.

763 F.2d at 1118.  The Tenth Circuit found, in Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259 (10th Cir. 1995), that fraud on the court "requires a showing that one has acted with an intent to

deceive or defraud the court." 56 F.3d at 1267. It explained that there must be a "showing of conscious wrongdoing -- what can properly be characterized as a deliberate scheme to defraud -- before relief from a final judgment is appropriate under the Hazel-Atlas standard." Robinson v. Audi Aktiengesellschaft, 56 F.3d at 1267. When alleging a claim of fraud on the court, the plaintiff "must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment." Weese v. Schukman, 98 F.3d 542, 552 (10th Cir. 1996). In Weese v. Schukman, the Tenth Circuit, quoting the United States Court of Appeals for the Fifth Circuit, noted that

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

98 F.3d at 552-53 (emphasis in original)(quoting Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)). There, the plaintiff made three allegations of fraud: (i) that the defendant failed to reveal that he had served as director of the emergency room; (ii) that the defendant failed to reveal that the emergency room maintained information from a subscription service regarding how to treat poisoning victims; and (iii) that the defendant failed to reveal that the emergency room cancelled its subscription to the resource after the plaintiff requested his medical records. See Weese v. Schukman, 98 F.3d at 553 n.8. The Tenth Circuit concluded that those allegations, even if true, did not rise to the level of fraud on the court and that the district court's finding that there was no fraudulent intent, an "absolute prerequisite to a finding of fraud on the court," was not clearly erroneous. Weese v. Schukman, 98 F.3d at 553.

## LAW REGARDING OFFENSIVE COLLATERAL ESTOPPEL

Collateral estoppel, or issue preclusion, can be used either defensively or offensively. "In

both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329 (1979). Offensive estoppel allows plaintiffs to prevent defendants from contesting issues that they have previously had decided against them. See Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834, at *8 (D.N.M. Apr. 28, 2009)(Browning, J.). The demise of the mutuality doctrine allows a plaintiff to assert estoppel against a defendant who lost an earlier suit even if the plaintiff was not a party to the earlier suit. See Roybal v. City of Albuquerque, 2009 WL 1329834, at *8. The key is not that the defendant had a chance to litigate against the plaintiff, but that the defendant had a chance to litigate the issue, whomever the opponent was.

"The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. at 331. Unfairness to a defendant can result from a variety of situations, including: (i) if the "defendant in the first action is sued for small or nominal damages [and thus] may have little incentive to defend vigorously, particularly if future suits are not foreseeable," id. at 330; (ii) if "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant," id. and (iii) if "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result," id. at 331.

"Courts generally have broad discretion in using offensive estoppel . . . ." Meredith v. Beech Aircraft Corp., 18 F.3d 890, 894-95 (10th Cir. 1994).

> Under Parklane, if the components of collateral estoppel are satisfied, its benefits of economizing judicial resources and lessening the burdens of relitigating identical issues already decided, would be afforded a non-mutual plaintiff provided defendant

had previously had a full and fair opportunity to litigate the issue.  Importantly, the decision to eliminate the mutuality requirement to permit the plaintiff such a windfall was placed within the trial court's "broad discretion."

Dodge v. Cotter Corp., 203 F.3d 1190, 1198 (10th Cir. 2000)(quoting Parklane Hosiery Co., Inc. v. Shore, 439 U.S. at 331). In Roybal v. City of Albuquerque, the Court determined that it should not permit the plaintiff to use offensive collateral estoppel, because he could have joined his wife's earlier action and "[h]aving waited for his wife's lawsuit to reach a favorable conclusion, Mr. Roybal cannot now invoke preclusion."  2009 WL 1329834, at *11.

## LAW REGARDING COLLATERAL ESTOPPEL AND STATE CRIMINAL JUDGMENTS

In Allen v. McCurry, 449 U.S. 90 (1980), the Supreme Court held that defendants in a 42 U.S.C. § 1983 action could invoke criminal proceedings as collateral estoppel.  See 449 U.S. at 103-05.  Section 1738 of Title 28 of the United States Code generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Allen v. McCurry, 449 U.S. at 96.  Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'"  Ullrich v. Blanchard, 142 N.M. 835, 839, 171 P.3d 774, 778 (Ct. App. 2007)(quoting Deflon v. Sawyers, 139 N.M. 637, 137 P.3d 577 (2006); Adams v. United Steelworkers of Am., 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)).  For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined."  Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778 (quoting City of Sunland Park v. Macias, 134 N.M. 216, 220, 75 P.3d 816, 820 (Ct. App. 2003)).  If the party invoking the doctrine establishes

a prima-facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. See Padilla v. Intel Corp., 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998); State v. Bishop, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct. App. 1992).

Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal. See Shovelin v. Cent. N.M. Elec. Coop., 115 N.M. at 299, 850 P.2d at 1002. Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine. See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993). Collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair. See Reeves v. Wimberly, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988). New Mexico courts have held that "[c]ollateral estoppel may bar the relitigation of ultimate facts or issues decided in a prior criminal action." City of Roswell v. Hancock, 126 N.M. 109, 112, 967 P.2d 449, 452 (Ct. App. 1998).

## LAW REGARDING COLLATERAL ESTOPPEL AND FEDERAL JUDGMENTS

The "preclusive effect given in federal court to a prior federal decision is subject to federal law." Dodge v. Cotter Corp., 203 F.3d 1190, 1197 (10th Cir. 2000). See Semtek Int'l v. Lockheed Martin Corp., 531 U.S. 497, 507-08. The Tenth Circuit has set forth the following elements for collateral estoppel:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party prior to the adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action

Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1207 (10th Cir. 2001).  A "default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been 'actually litigated.'" Meyer v. Rigdon, 36 F.3d 1375, 1379 (7th Cir. 1994).  "When judgment is issued as a result of a default, however, the underlying issues have not been actually litigated.  For that reason, a default judgment cannot serve to preclude the litigation of issues under the doctrine of collateral estoppel." Farah v. Pramil S.R.L., 300 F.App'x 915, 918 (Fed. Cir. 2008)(unpublished).  See Restatement (Second) of Judgments § 27 cmt. e (1982)("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").

## ANALYSIS

The Plaintiffs move for summary judgment only with respect to Count 3 -- fraud on the court.  The Plaintiffs ask that the Court find that W. Mitchell perjured himself on the stand during the Court's damages trial in Mitchell v. City of Santa Fe, No. CIV 05-1155, and that he engaged in a scheme to defraud the Court.  Because the Court must construe all inferences in D. Mitchell's favor, the Court concludes that the Plaintiffs have not shown that W. Mitchell lied during his testimony.  Furthermore, the Court finds that the Plaintiffs have not shown that there was a deliberate scheme to defraud the court.  Genuine issues of material fact exist whether W. Mitchell lied on the stand during the damages trial and as to W. Mitchell's intent.  Accordingly, the Court will deny the MSJ.

The Plaintiffs  assert that a default judgment does not entitle a party to obtain a verdict through the knowing, deliberate presentation of perjured testimony.  See MSJ at 20.  The Plaintiffs contend that the three-million dollar 05-1155 Final Judgment rests upon fraud, perjury, and a deliberate scheme to manipulate the judicial process.  See MSJ at 23-24.  They argue that the

undisputed evidence demonstrates that W. Mitchell and Mr. Montoya were aware that W. Mitchell had been indicted, tried, and convicted of attacking O'Brien.  See MSJ at 24.  They assert that W. Mitchell and Mr. Montoya had actual knowledge of the State Findings of Fact, which "made undisputably clear, among other things, that O'Brien was a Santa Fe County Sheriff's Deputy . . . and that Mitchell had attacked O'Brien three times with a sword, charging while O'Brien backed up in retreated."  MSJ at 24.  They further assert that "[n]o honest person (party or attorney) could read the state court's Findings of Fact and Conclusions of Law and be confused, to any extent whatsoever, as to the true facts."  MSJ at 24.

## I.   BECAUSE THE PLAINTIFFS WAIVED THEIR AFFIRMATIVE DEFENSES WHEN THEY DID NOT APPEAR IN CIVIL ACTION NUMBER 05-1155, THE STATE FINDINGS OF FACT DID NOT BIND THE COURT IN THAT CASE.

At the hearing, the Plaintiffs asserted that the State Findings of Fact establish the facts beyond a reasonable doubt, and that W. Mitchell's testimony was inconsistent with those findings.  See May 18, 2012 Tr. at 34:7-25 (Court, Dickman).  The Plaintiffs argued that those findings bound W. Mitchell, because he waived his right to appeal the State Findings of Fact.  See May 18, 2012 Tr. at 36:2-37:5 (Dickman).  D. Mitchell disagreed and asserted that the State Findings of Fact were established "by a lack of contest" and, although now W. Mitchell's testimony stands against those findings, it does not establish fraud on the court.  May 18, 2012 Tr. at 56:7-19 (Juarez).

### A.   THE STATE FINDINGS OF FACT DID NOT BIND THE COURT IN MITCHELL V. CITY OF SANTA FE.

Rule 8(c) of the Federal Rules of Civil Procedure establishes that res judicata is a defense which a party must "affirmatively state."  Fed. R. Civ. P. 8(c).  In Ajaj v. United States, 293 F.App'x 575(10th Cir. 2008)(unpublished), the Tenth Circuit recognized a party's failure to raise collateral estoppel or issue preclusion as an affirmative defense "generally waives the issue."  293 F.App'x

at 584 n.8.  The Tenth Circuit has stated that an "argument that the opposing party is estopped from litigating an issue must be timely raised," because permitting a "belated assertion of collateral estoppel" would do "'nothing to vindicate the two primary policies behind the doctrine, conserving judicial resources and protecting parties from the expense and vexation of relitigating issues.'" Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1029-30 (10th Cir. 2003)(quoting Harvey by Blankenbaker v. United Trans. Union, 878 F.2d 1235, 1243 (10th Cir. 1989)).  The Plaintiffs never appeared as defendants in Mitchell v. City of Santa Fe, No. CIV 05-1155, and thus never raised collateral estoppel as an affirmative defense.  See Clerk's Entry of Default at 1.[22]  Accordingly, any collateral estoppel defense, in the previous case, was waived, and the State Findings of Fact were not binding on the Court.[23]

**B.   ALTHOUGH THE PLAINTIFFS WAIVED COLLATERAL ESTOPPEL IN MITCHELL V. CITY OF SANTA FE, THE STATE FINDINGS OF FACT LIKELY BIND THE COURT IN THIS CASE.**

Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778. For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was

------

[22]The Plaintiffs assert that there is a service of process issue that may impact the default judgment, but they concede that service of process is not relevant to whether there was fraud on the Court.  See MSJ at 20.  Accordingly, the Court will not discuss the service issue in its analysis.

[23]The Court also notes that the omission of the information contained in the State Findings of Fact in the Mitchell Complaint does not constitute fraud on the court.  See Weese v. Schukman, 98 F.3d at 553 (finding that a doctor's alleged material misrepresentations and omissions did not rise to the level of a fraud on the court, and relying on cases which state that non-disclosure does not establish fraud on the court).

actually litigated, and (4) the issue was necessarily determined."  Ullrich v. Blanchard, 142 N.M.

at 839, 171 P.3d at 778.  The Plaintiffs argue that the factual findings in the States Findings of Fact

are binding in this case under the doctrine of collateral estoppel.  See May 18, 2012 Tr. at 42:8-24

(Dickman).  The Court finds that the collateral-estoppel elements are satisfied, because: (i) W.

Mitchell, for whom D. Mitchell stands as a representative, was a party to the state criminal

proceeding; (ii) the subject matter of the litigation is different, because the proceeding before Judge

Pfeffer was a state criminal action and the action before the Court is a federal independent action

in equity; (iii) the state criminal proceeding involved a two-day trial in which Judge Pfeffer heard

evidence; and (iv) Judge Pfeffer made his findings of facts based upon the evidence before him.

See State Findings of Fact ¶¶ 1-32, at 1-4.  The Court of Appeals of New Mexico has held that

"[c]ollateral estoppel may bar the relitigation of ultimate facts or issues decided in a prior criminal

action."  City of Roswell v. Hancock, 126 N.M. at 112, 967 P.2d at 452.[24]  Additionally, the Tenth

Circuit has held that parties, like the Plaintiffs, who were not parties to the original action can use

collateral estoppel offensively.  See Dodge v. Cotter Corp., 203 F.3d at 1198.  Accordingly, although

---

[24]When determining what the State would do, the Court looks to the Supreme Court of New
Mexico as controlling authority.  See Mosley v. Titus, 762 F.Supp.2d 1298, 1332 (D.N.M.
2010)(Browning, J.)(discussing the weight of a decision from the Court of Appeals of New Mexico
on a matter of state law in a diversity case).  A decision from the Court of Appeals of New Mexico
can, however, help predict how the Supreme Court of New Mexico would address an issue of law.
See Arnold v. Farmers Ins. Co. of Ariz., 827 F.Supp.2d 1289, 1300 (D.N.M. 2011)(Browning, J.).
It seems likely that the Supreme Court of New Mexico would follow this rule and permit state
criminal proceedings to collaterally estop civil actions on the same issues, because the same
concerns regarding judicial economy apply and because findings in a criminal case are made beyond
a reasonable doubt.  The Supreme Court of New Mexico has held that a criminal conviction or
acquittal may be "res judicata against a subsequent prosecution for the same offense."  State v.
Naranjo, 94 N.M. 407, 412, 611 P.2d 1101, 1106 (1980).  The Restatement (Second) of Judgments
also provides that a judgment in favor of the prosecuting authority is preclusive in favor of the in
favor of a third person in a civil action against the defendant in the criminal prosecution.
See Restatement (Second) of Judgments § 85(2)(a) (1982).

-51-

the parties have not addressed the elements of collateral estoppel, it is likely that collateral estoppel would apply to bar the parties from relitigating the facts which Judge Pfeffer determined in the State Findings of Facts.

The doctrine of collateral estoppel will limit the issues and arguments at trial. The Court notes, however, that the State Findings of Fact do not mention one of the facts which the Plaintiffs argue against most strongly -- that W. Mitchell was shot in the back. See May 18, 2012 Tr. at 38:2-23 (Court, Dickman). Judge Pfeffer's factual findings establish that, "when Walter Mitchell had advanced to within approximately ten (10) feet of Sergeant O'Brien, Sergeant O'Brien discharged his firearm three (3) times" and that "Walter Mitchell was shot a total of three (3) times by Sergeant O'Brien." State Findings of Fact ¶¶ 31-32, at 4. These facts imply that W. Mitchell was facing O'Brien when O'Brien shot him, but do not directly establish that W. Mitchell was shot in the front. Thus, even though the State Findings of Fact are likely binding in this proceeding, the Court will have to look carefully to see which facts were "necessarily determined" in the state proceeding and which facts are only implied.

## II. ALTHOUGH W. MITCHELL'S TESTIMONY IN MITCHELL V. CITY OF SANTA FE, NO. CIV 05-1155, IS, IN PART, INCONSISTENT WITH THE STATE FINDINGS OF FACT, A GENUINE ISSUE OF MATERIAL FACT EXISTS WHETHER W. MITCHELL COMMITTED PERJURY.

It may be that the Court must accept the State Findings of Fact as binding in this case and that the Court may have to tell the jury what facts are undisputed. W. Mitchell had a right to tell his version of events in Mitchell v. City of Santa Fe, however, because the Plaintiffs did not assert collateral estoppel as an affirmative defense. When the State Findings of Fact were not binding in Mitchell v. City of Santa Fe, and where W. Mitchell did not testify during the state criminal trial, the Court cannot say that any tension between the State Findings of Fact and W. Mitchell's

testimony establishes perjury.

The Court has had difficulty locating cases which discuss perjury based on an earlier case's findings of facts, and the parties referenced no cases defining perjury or its elements.[25] Black's Law Dictionary defines perjury as the "act or instance of a person's deliberately making material false or misleading statements under oath." Black's Law Dictionary at 1254 (9th ed. 2009). Perjury is also a criminal offense, in violation of 18 U.S.C. § 1623(a), and, to establish that such a crime has been committed, the government must demonstrate that: (i) the defendant made a declaration under oath before a court; (ii) such declaration was false; (iii) the defendant knew that the declaration was false; and (iv) the false declaration was material to the court's inquiry. See United States v. Strohm, 671 F.3d 1173, 1177 (10th Cir. 2011). The Tenth Circuit has held, in the criminal context, that "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty does not automatically warrant a finding of perjury" and that "[a]n automatic finding of untruthfulness, based on the verdict alone, would impinge on the constitutional right to testify on one's own behalf." United States v. Markum, 4 F.3d 891, 897 (10th Cir. 1993). It has required more than "[m]ere disagreement" between "the defendant's testimony and the jury's verdict" to support a finding of perjury. United States v. Sarracino, 340 F.3d 1148, 1172 (10th Cir. 2003). The United States Court of Appeals for the Ninth Circuit has also held that inconsistent testimony "is not tantamount to perjury absent a showing of knowing falsehood." United States v. Wilson, 988 F.2d 126, 1993 WL

_____

[25]The Plaintiffs cite two Tenth Circuit cases in support of their perjury and fraud-on-the-court arguments that did not arise in the same procedural context as this case. In Chavez v. City of Albuquerque, the Tenth Circuit dismissed the plaintiff's case as a sanction for perjuring himself during discovery. See 402 F.3d 1039. Dismissing a case as a sanction does not involve the same equities as a case where a court has entered a final judgment, and the 05-1155 Final Judgment is now several years old. Similarly, the Plaintiffs' cite Archibeque v. Atchison, Topeka and Santa Fe Ry. Co., in which the district court dismissed the case as a sanction for the plaintiff's continued willful, false, and misleading statements during discovery. See 70 F.3d at 1173.

55193, at *6 (10th Cir. 1993)(unpublished table decision).  "Generally, in order to constitute perjury or false swearing, the false statement must be made with the requisite criminal intent.  Generally the false statement must be made with the intent to deceive and must be willfully, deliberately, knowingly, and corruptly made."  70 C.J.S., Perjury § 27 (2012).  "A statement can be false without being uttered with the scienter required to render it perjurous."  Margo v. Weiss, 213 F.3d 55, 63 (2d Cir. 2000).  "Inasmuch as, in order to constitute perjury, a false statement must be knowingly false, it must appear that the accused knew or believed his statement to be false, or was consciously ignorant as to its truth or falsity at the time he or she made it."  70 C.J.S., Perjury § 29.

W. Mitchell did not testify during his state criminal trial.  See May 18, 2012 Tr. at 52:15-23 (Juarez).  Based upon the evidence before him, Judge Pfeffer found that W. Mitchell was shot while he was advancing on O'Brien.  See State Findings of Fact ¶¶ 28-32, at 4.  The State Findings of Fact do not mention where on his body W. Mitchell was shot.  The Plaintiffs argue that W. Mitchell's testimony that the officer stealthily approached him, unseen, while he was contemplating the weather is perjurous, because it contradicts the State Findings of Fact.  The Plaintiffs have pointed to no authority equating testimony inconsistent with a court's findings with perjury.  The Court notes that a court makes a decision based only on the information before it, and makes a determination based on the weight of the evidence and the credibility of those testifying.  Judge Pfeffer could not evaluate W. Mitchell's recollection of the events, because W. Mitchell did not testify.  While the Court believes that a court's factual finding are likely binding in this case, the justice system would be overrun with perjury prosecutions if testimony inconsistent with such findings alone could justify a finding of perjury.  Moreover, as the Court has already determined, the State Findings of Fact were not binding on the Court, because O'Brien and the Board of County Commissioners waived their collateral estoppel affirmative defense when they did not appear.  The Court has difficulty

concluding that findings which did not bind the Court threatened W. Mitchell with perjury when he testified inconsistently with them.  The purpose of collateral estoppel is to prevent parties from relitigating certain facts and issues; it does not mean that those findings establish the only accurate version of the truth.  See Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d at 1029-30.  Accordingly, the Court does not believe that the Plaintiffs have established that falsity of W. Mitchell's statements.

Furthermore, the Court finds that the Plaintiffs have not shown that W. Mitchell testified with the requisite intent to commit perjury.  The only evidence the Plaintiffs have put forward is that W. Mitchell's testimony was inconsistent with the State Findings of Fact and that W. Mitchell was aware of the State Findings of Fact.  To establish perjury, however, the Plaintiffs must demonstrate that the alleged false statement was "made with the intent to deceive and must be willfully, deliberately, knowingly, and corruptly made."  70 C.J.S., Perjury § 27.  Perjury requires a "willful intent to provide false testimony."  United States v. Stoner, 446 F.App'x 720, 729 (10th Cir. 2012)(unpublished).  The Court has only the conflict between the State Findings of Fact and W. Mitchell's testimony.  Moreover, at summary judgment, the court must resolve all reasonable inferences and doubts in favor of the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Given that the Court must construe the evidence in a light most favorable to W. Mitchell and the absence of any evidence regarding W. Mitchell's mental state, the Court concludes that the Plaintiffs have not established that W. Mitchell willfully intended to provide false testimony.  W. Mitchell's testimony at the damages trial in Mitchell v. City of Santa Fe, No. CIV 05-1155 relates how he perceived and recalled events.  Even assuming that the incident occurred in exactly the same manner as the State

Findings of Facts recite, W. Mitchell could perceive and recall events differently, especially since he was likely mentally ill on the date in question.  See State Findings of Fact ¶¶ 5-13, at 2 (recounting W. Mitchell's abuse of dextromehtorphan and marijuana and possible mental illness). Testimony is not perjury if it is the result of "confusion, mistake, or faulty memory." United States v. Stoner, 466 F.App'x at 729.  It is difficult to make this determination without assessing the credibility of the testifying witness.  See United States v. Weller, 238 F.3d 1215, 1222 (10th Cir. 2001)("Although Ms. Weller argues that the two perjury findings related to use of her security access code were the subject of conflicting testimony at trial, the sentencing judge is entitled to weigh that conflicting testimony and to assess its credibility.").  At summary judgment, the Court is not permitted to make those kinds of credibility assessments.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  Faced with an absence of evidence from which the Court could infer W. Mitchell's mental state during the damages trial and evidence that at the time of the incident W. Mitchell may have been experiencing a mental breakdown, the Court, construing the evidence in the light most favorable to D. Mitchell, cannot find that W. Mitchell willfully intended to provide false evidence.

Accordingly, the Court finds that the Plaintiffs have not established that W. Mitchell committed perjury when he testified in Mitchell v. City of Santa Fe, No. CIV 05-1155, inconsistently with the State Findings of Fact, in State v. Mitchell, No. D-101-CR-2002-01027. There is a genuine issue of material fact whether W. Mitchell committed perjury and made intentional, false statements, which precludes summary judgment on the Plaintiffs' fraud-on-the-court claim.

**III.    ALTHOUGH THERE IS SOME TENSION BETWEEN W. MITCHELL'S TESTIMONY IN <u>MITCHELL V. CITY OF SANTA FE,</u> NO. CIV 05-1155, AND HIS TESTIMONY DURING THE STATE SENTENCING HEARING, A GENUINE ISSUE OF MATERIAL FACT EXISTS WHETHER W. MITCHELL COMMITTED <u>PERJURY.</u>**

The Plaintiffs contend that W. Mitchell acknowledged the "true facts" during his state criminal sentencing, when he told Judge Pfeffer that "there is no doubt in my mind that I started the ball rolling that morning" and that "attacking four armed police officers with a sword" was "sheer madness." MSJ at 24. They also emphasize that W. Mitchell apologized to O'Brien for putting him "through the trauma." MSJ at 24-25.

At his state sentencing, W. Mitchell said the following during his allocution:

Mitchell:    I suppose I should first address the issue of whether or not I feel remorse. There is no doubt in my mind that I started the ball rolling that morning. I believe a person is responsible for their own actions, that it's possible to stay out of trouble. I very obviously failed to do so. The extent of my regret is very difficult to express. I, this has been a shattering experience and if you have heard my prayers in the last several months you'd know my remorse. I feel bad about the whole thing. I've never been so ashamed in my life. I don't know what to say, your Honor.

* * * *

Court:    How do you feel about the trauma to which you subjected Officer O'Brien?

Mitchell:    That was a horrible thing to do. The sheer madness of the act, if anybody had attacked me with a sword, it's totally over the top, what I did, what I apparently did. The -- I don't want to hurt anybody, your Honor, and the notion of attacking four armed police officers with a sword is perfectly insane. I think about the definition and the staggering quality of the offense, given that if I'd been shot dead that would have been all good and fair.

State Hearing Transcript at 2-4; MSJ ¶ 11, at 9. The Plaintiffs contrast those statements with W. Mitchell's testimony at the damages trial:

-57-

Q [by Montoya]:        What were you doing at that moment?

A [by Mitchell]:       I was standing, holding the fake sword that I used to drive off
                       my neighbor's Rottweiler, who had attacked me that morning
                       -- I did not injure the dog, mind you -- and looking out into
                       the sky, spacing out wondering what the whether was going
                       to be like that day.

Q:                     Did you see the officer approach you?

A:                     No, I did not.  His own testimony was that he approached by
                       stealth.

* * * *

A:                     . . . The first I knew that somebody was standing behind me
                       was when I heard a command to "Put down your weapon,"
                       bang, bang, bang.

Q:                     What was the bang, bang, bang?

A:                     He began firing before he finished the sentence.

Q:                     Was there anyone else near you?

A:                     Not that I saw.

Q:                     Were you facing the officer?

A:                     No.

No. CIV 05-1155 Dec. 10, 2007 Tr. at 21:5-22:13 (Montoya, W. Mitchell); id. at 22:5-13 (Montoya,

W. Mitchell); id. at 49:13-17 (W. Mitchell); MSJ ¶ 37, at 16-17.  W. Mitchell's testimony at the

state sentencing proceeding do not go so far as the Plaintiffs might hope, however.  Many of his

statements are sufficiently vague that they do not conflict with his later testimony at the damages

trial.  For example, the phrase "I started the ball rolling that morning" could refer to many things,

including the altercation with his neighbor's dogs, to which also admitted during the damages trial.

He also vaguely referenced his conduct as what "I apparently did."  W. Mitchell talks about the

-58-

"notion" of attacking police officers as insane, but does not admit to it.  Furthermore, W. Mitchell's testimony during the sentencing proceeding does not discuss the most salient facts regarding where W. Mitchell was shot.  At the hearing, the Plaintiffs clarified, in response to a question, that their fraud argument rested on W. Mitchell's testimony that he was shot in the back, when he did not present a danger to anyone.  See May 18, 2012 Tr. at 38:2-23 (Court, Dickman).  Nothing in W. Mitchell's allocution squarely contradicts that later testimony.  Although W. Mitchell's manner and testimony are different and there is a tension, nothing in the two transcripts directly contradicts each other or establishes that he made a false statement with willful intent.  Moreover, the Court has to take any inferences one can draw from this testimony in the light most favorable to D. Mitchell.  See Hunt v. Cromartie, 526 U.S. at 550-55.  The Court finds that W. Mitchell's sentencing testimony does not establish that W. Mitchell committed perjury during the Court's damages trial, such that he committed fraud on the court.  Accordingly, a genuine issue of material fact exists whether W. Mitchell lied on the stand during the Court's damages trial, such that summary judgment is not appropriate.

## IV.   THE PLAINTIFFS HAVE NOT SHOWN THAT W. MITCHELL AND MR. MONTOYA ENGAGED IN A DELIBERATE PLAN TO DECEIVE THE COURT.

The Plaintiffs contend that the three-million dollar 05-1155 Final Judgment rests upon fraud, perjury, and a deliberate scheme to manipulate the judicial process.  See MSJ at 23-24.  They argue that the undisputed evidence demonstrates that W. Mitchell and Mr. Montoya were aware that W. Mitchell had been indicted, tried, and convicted of attacking O'Brien.  See MSJ at 24.  They further assert that "[n]o honest person (party or attorney) could read the state court's Findings of Fact and Conclusions of Law and be confused, to any extent whatsoever, as to the true facts."  MSJ at 24.  They argue that, notwithstanding W. Mitchell's and Mr. Montoya's knowledge of the true facts, W.

Mitchell engaged in a scheme to defraud the Court and pervert the justice system.  See MSJ at 25.

> Professors Wright and Miller have cautioned:
>
> Any fraud connected to the presentation of a case to a court is a fraud upon the court, in a broad sense.  That cannot be the sense in which the term is used in the final saving clause . . . .  The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action, subject to the procedural limitations applicable to those remedies.

11 Wright & Miller, supra § 2870, at 415.  To that end, they have described cases of perjured evidence as "troublesome," and assert that some courts have suggested this is fraud on the court only where an officer of the court is party to the perjury.  11 Wright & Miller, supra § 2870, at 419-20. The Tenth Circuit has held that fraud on the court "is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." Bulloch v. United States, 763 F.2d at 1118 (emphasis added).  It requires "what can properly be characterized as a deliberate scheme to defraud." Robinson v. Audi Aktiengesellschaft, 56 F.3d at 1267.  The Tenth Circuit, quoting the Fifth Circuit, has noted:

> Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud on the court.  Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court.

98 F.3d at 552-53 (emphasis in original)(quoting Rozier v. Ford Motor Co., 573 F.2d at 1338).

> The Plaintiffs have not established that W. Mitchell's and Mr. Montoya's, together, engaged in a scheme to perpetrate a fraud on the Court, such that the Plaintiffs are entitled to a "truly extraordinary form of relief." Superior Seafoods, Inc. v. Tyson Foods, Inc., 620 F.3d 873, 878 (6th Cir. 2010).  The United States Court of Appeals for the Sixth Circuit, making comments similar to the Tenth Circuit's in Bulloch v. United States, has held that cases dealing "with fraud on the court often turn on whether the improper actions are those of the parties alone, or if the attorneys in the

case are involved." Rodriguez v. Honigman Miller Schwartz & Cohn LLP, 465 F.App'x 504, 508

(6th Cir. 2012)(unpublished).  See also Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 49

(1st Cir. 1995)(holding that "perjury alone, absent allegation of involvement by an officer of the

court . . . , has never been sufficient" to constitute fraud on the court).

The two facts upon which the Plaintiffs rely to establish Mr. Montoya's involvement in a

scheme to defraud the Court are: (i) the fact that Cummings went to Mr. Donatelli's office to scan

some state court documents, see Cummings Aff. ¶¶ 11-13, at 2; and (ii) Mr. Montoya's history of

ethical violations and sanctions.  Mr. Montoya's history with various courts in this state is, however,

of limited probative value.  Under rule 404(a) of the Federal Rules of Evidence: "Evidence of a

person's character or character trait is not admissible to prove that on a particular occasion the

person acted in accordance with the character trait."  Fed. R. Evid. 404(a).  Rule 404(b) provides:

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order

to show that on a particular occasion the person acted in accordance with the character."  Fed. R.

Evid. 404(b).  D. Mitchell has argued that this evidence is immaterial.  See Response at 16-17.

Offering evidence regarding Mr. Montoya's history of ethical violations to establish that he violated

his ethical obligations in Mitchell v. City of Santa Fe, No. CIV 05-1155, the only relevance such

evidence has, would violate rule 404.  See Fed. R. Evid. 404 advisory committee's note to 2006

amendments ("The Rule has been amended to clarify that in a civil case evidence of a person's

character is never admissible to prove that the person acted in conformity with the character trait.").

Even if D. Mitchell's materiality argument is insufficient to raise a rule 404 objection, character

evidence has limited probative value.  See Rocky Mountain Helicopters, Inc. v. Bell Helicopters

Textron, a Div. of Textron, Inc., 805 F.2d 907, 917 (10th Cir. 1986)("This limitation exists because

character evidence is generally regarded as being of slight probative value and potentially very

prejudicial."). What Cummings knew does little to establish what Mr. Montoya knew at the time he filed the Mitchell Complaint on W. Mitchell's behalf or to establish that he did not file the Mitchell Complaint in good faith. Mr. Montoya's ethical violations also do little to establish an intent to deceive in this case, because, even if the Court could -- in the absence of rule 404 -- infer that Mr. Montoya might act in conformity with this character evidence, the Court is required to draw all inferences in favor of D. Mitchell. See Hunt v. Cromartie, 526 U.S. at 550-55. The Plaintiffs have introduced no evidence demonstrating that Mr. Montoya knew that W. Mitchell lied. Mr. Montoya's involvement in this case thus does not provide separate evidence to support an intent to deceive or increase the likelihood that W. Mitchell committed perjury.

Because the Plaintiffs have introduced no evidence, separate from the allegations regarding W. Mitchell's testimony which the Court found did not establish perjury, they have not established, by clear and convincing evidence, that W. Mitchell and Mr. Montoya were involved in a scheme to present perjured evidence. Accordingly, the Plaintiffs' allegations concerning Mr. Montoya do not establish a fraud on the court.

**V.   BECAUSE THE PLAINTIFFS HAVE NOT SHOWN THAT W. MITCHELL COMMITTED PERJURY, THEY HAVE FAILED TO ESTABLISH THAT W. MITCHELL HAD AN INTENT TO DECEIVE AND A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO W. MITCHELL'S INTENT.**

The Tenth Circuit has held that fraudulent intent is an "absolute prerequisite to a finding of fraud on the court." Weese v. Schukman, 98 F.3d at 553. It has explained that there must be a "showing of conscious wrongdoing . . . before relief from a final judgment is appropriate under the Hazel-Atlas standard." Robinson v. Audi Aktiengesellschaft, 56 F.3d at 1267. The Plaintiffs have not shown that W. Mitchell has committed perjury or that he consciously did wrong. Most of the evidence that the Plaintiffs presented centers on conflicts between the State Findings of Fact and W.

Mitchell's testimony, and the W. Mitchell Complaint.  The Plaintiffs have not, however, introduced any evidence regarding W. Mitchell's state of mind, which is central to whether he had an intent to deceive.  The Court would have to infer wrongdoing from the conflict between the State Findings of Fact and W. Mitchell's position during Mitchell v. City of Santa Fe, No. CIV 05-1155, and, at summary judgment, all inferences must tilt in favor of the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55.  Furthermore, the Tenth Circuit has held that "all doubts must be resolved in favor of the finality of the judgment." Weese v. Schukman, 98 F.3d 542, 552.  Because the Court cannot properly infer an intent to deceive, the Plaintiffs have not established an essential element of a fraud-on-the-court claim.  Accordingly, there is a genuine issue of material fact as to W. Mitchell's intent.  See F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1540 (10th Cir. 1994)(finding that "intent becomes a question of fact which will generally not be subject to summary judgment," in a fraud case, where an individual's conduct "falls somewhere between the two extremes of embezzlement and simple poor judgment").

The Court also emphasizes that fraud on the court is an equitable doctrine and that the Court must consider the equities on both sides of the litigation.  If the Court vacates the 05-1155 Final Judgment, the Court ensures that any wrong which may have been committed against W. Mitchell is unlikely to be redressed, because W. Mitchell is now deceased and the case is now seven years old.  Given the evidence before the Court, on summary judgment, the Court cannot say that the equities weigh in favor of vacating the judgment.  Accordingly, the Court will deny the MSJ with respect to Count 3.

**IT IS ORDERED** that the Plaintiffs' Motion for Summary Judgment, filed April 13, 2012 (Doc. 27), is denied.

-63-

UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael Dickman
Santa Fe, New Mexico

*Attorney for the Plaintiffs*

Santiago E. Juarez
Albuquerque, New Mexico

*Attorney for the Defendant*